[Civ. No. 14416. First Dist., Div. Two. Nov. 30, 1950.]

NEWTON CRUMLEY, Respondent, v. THE WALTER M. BALLARD CORPORATION (a Corporation), Appellant.

Cooper, White & Cooper, Sheldon G. Cooper and George A. Helmer for Appellant.

Heller, Ehrman, White & McAuliffe and Lawrence C. Baker for Respondent.

THE COURT.—Action for damages for the breach of an express oral contract, and an express oral warranty. Judgment for the plaintiff, and defendant appeals.

In August, 1946, respondent was the owner and operator of the Commercial Hotel in Elko, Nevada. Appellant was and is engaged in the business of acting as consultant and adviser in remodeling and renovating hotel buildings.

Desiring to redecorate and remodel the public rooms of the Commercial Hotel, respondent entered into negotiations with appellant's western general manager, Harry S. Moyer, to obtain appellant's services in this regard. These negotiations resulted in the formation of a written contract. This contract was in the form of a letter from Moyer to respondent, dated August 19, 1946, which set out the terms under which appellant would perform services for respondent. Respondent indicated upon this letter his acceptance of the terms contained therein. So far as it is pertinent to this dispute, the text of this letter is set out below:

"Dear Mr. Crumley:

"Confirming arrangements made in Elko with you last week for the services of The Walter M. Ballard Corporation in interior design and decoration at your hotel properties in Elko, we are proceeding with plans for the following work for fees as stipulated:

I. *Ranchinn* (This section dealt with services to be performed by appellant at Ranchinn, another hotel property owned by respondent, which services are not involved in this litigation.)

II. COMMERCIAL HOTEL

"All public spaces, including the following, will be completely redecorated:

> Dining Room
> Lobby-Lounge-Coffee Shop
> Casino and Bar
> Cocktail Lounge and Bar.

"It is understood that furnishings have been purchased for these areas. We will have to fill in, however, with decorative objects and a small number of additional pieces. The rooms in the old building, namely, the dining room-lobby-lounge, coffee shop and casino and bar will be planned for interior decoration for a period of approximately two years, when this building will be replaced. We will make a more permanent design and scheme for interior decoration for the cocktail lounge and bar, which room will probably remain fixed. We will prepare preliminary plans and sketches for the interior decoration and design of the above rooms and supervise the installation of any new equipment and schedule the work to completion for a fee of 15% of the cost of all work undertaken. A retainer fee of $3,000.00 will be due at the completion of our preliminary survey and awarding of contracts for the work."

Then follow provisions for the payment of fees, and for payment of the expenses of appellant's personnel. As previously stated, respondent indicated on this letter his acceptance of the terms set out therein on August 27, 1946.

Subsequently respondent decided upon a more permanent and comprehensive scheme for fitting out the public spaces of the Commercial Hotel. Respondent then considered the installation of an air-conditioning system for these public spaces of the hotel. It appears uncontradicted that the air-conditioning system was not decided upon nor even mentioned until after the formation of the August 27, 1946, contract.

The trial court found as a fact: "That on or about the 26th day of September, 1946, plaintiff and defendant orally agreed that defendant should prepare and furnish the plans and specifications and the engineering supervision for a proposed new air-conditioning system to be installed in and for the public spaces in said Commercial Hotel."

The trial court also made the following findings: "That on said 26th day of September, 1946 in the City of Elko, State of Nevada, and at other times in said City and State between said 26th day of September, 1946, and the 24th day of January, 1947, said defendant by its duly authorized representatives orally stated and warranted to plaintiff that the plans and specifications to be prepared by defendant would provide for an air-conditioning system which would function satisfactorily in all respects, would be properly engineered and would provide a uniform and comfortable temperature in all of the public spaces of said Hotel at all times and in all seasons of the year." (Finding Number VI), and "That in accepting the plans and

specifications prepared as aforesaid by defendant and in entering into said contract with said Detweiler & Detweiler (contractors who installed the system) for the installation of said air-conditioning system plaintiff relied upon the statements and warranty of said defendant hereinbefore mentioned in paragraph VI hereof.'' It is for the breach of this agreement and warranty that respondent recovered judgment in the trial court.

On January 16, 1947, respondent informed Moyer that he regarded the August 27, 1946 contract as unsatisfactory, and ''. . . that in lieu of said contract the undersigned proposes to pay a fixed fee of $11,000 to said corp. for the services to be performed under said contract, plus travel and subsistence expenses in connection therewith.''

This resulted in the second written agreement between the parties, again in the form of a letter from Moyer to respondent, dated January 21, 1947, and received by respondent on January 27, 1947. The complete body of this letter reads as follows:

''This agreement will serve to amend and supersede our contract of August 19, 1946, accepted August 27, 1946 in accordance with your proposal of January 16, 1947.

''It is agreed that a fixed fee is hereby established in the amount of $11,000.00 for the work to be undertaken as set out in our contract of August 19th, based upon work which has been completed at the Ranchinn and work to be completed at the Commercial Hotel in accordance with our drawings and specifications as of January 15, 1947.

''For any additional major changes required to architectural or structural drawings involving the redesign of existing approved plans there will be a fee of 15% on the cost of work involved in the execution of these changes.

''In addition to the above fixed fee it is agreed and understood that the Hotel will provide subsistence in the form of room and meals without cost to our project supervisor or additional technical personnel as needed in Elko to further the progress of the job, plus transportation to and from San Francisco to Elko or other points in the servicing or procurement toward the execution of the job as required.''

An acceptance of the terms of the letter was indicated upon the face thereof by respondent, with the proviso that what was to constitute ''major changes'' would be mutually determined between the parties. This acceptance was not dated, but we

may safely assume an acceptance on the date received, i. e., January 27, 1947.

The heating and cooling phases of the air-conditioning system were completed by the contractors awarded the work in July and October of 1947, respectively. Neither performed satisfactorily. The trial court found as a fact that the failure of the air-conditioning system to perform satisfactorily was due to the faulty design and plans supplied by appellant. The trial court further found this failure to be a breach of the express agreement and warranty of appellant that their design would result in a satisfactory air-conditioning system, and awarded damages accordingly.

There was direct and positive testimony at the trial with regard to the oral agreement and warranty concerning the design of the air-conditioning system, which supports the trial court's findings in this regard.

The trial court also found that defendant breached an implied warranty that the plans would be suitable for the purposes for which they were intended.

Appellant bases this appeal on the following grounds: (1) That the trial court erred in admitting evidence of the oral agreement and express warranty concerning the design of the air-conditioning system; (2) That the trial court erred in finding an implied warranty of suitability as regards the plans for the system; and (3) That the damages awarded were unreasonable and excessive.

■ The parol evidence rule is not merely a rule of evidence but a principle of substantive law. (*Estate of Gaines,* 15 Cal. 2d 255, 264 [100 P.2d 1055] ; *Mulrooney* v. *Pietro,* 79 Cal.App. 2d 311, 314 [180 P.2d 62] ; Wigmore, 7th ed. § 2400 et seq.)

■ The contracts involved here, both the written and the alleged oral agreements, were entered into and were to be performed in the State of Nevada. Thus the agreements of the parties are to be interpreted according to the law of Nevada. (Civ. Code § 1646; *Hutchinson* v. *Hutchinson,* 48 Cal.App.2d 12, 18 [119 P.2d 214].)

Appellant cites the following Nevada cases as setting out the applicable law governing the admissibility of parol evidence when there is a written contract between the parties: *Gage* v. *Phillips,* 21 Nev. 150 [26 P. 60, 37 Am.St.Rep. 494] ; *Nevada etc. Co.* v. *Rae,* 47 Nev. 173 [218 P. 89, 223 P. 825] ; *Chiquita Mining Co.* v. *Fairbanks, Morse & Co.,* 60 Nev. 142 [104 P.2d 191] ; and *Bailey* v. *Neagle,* 54 Nev. 257 [13 P.2d

634]. To these cases may be added *Tallman* v. *First Nat. Bank of Nevada,* —— Nev. —— [208 P.2d 302].

To the general rule of exclusion of parol testimony contained in these cases, there are well defined exceptions. An independent agreement, though dealing with the subject matter of the written contract, may be proved by parol evidence (*Douglass* v. *Thompson,* 35 Nev. 196 [127 P. 561, Ann. Cas. 1914C 920]), and when the written agreement of the parties is incomplete, oral evidence is admissible to supply the missing terms of the complete agreement of the parties (*Herring-Hall-Marvin Safe Co.* v. *Balliet,* 38 Nev. 164 [145 P. 941]). The Nevada law on this point appears to be in accord with our own. The following California cases illustrate the rule and the exceptions to it with which we are concerned. "The rule, as applied to contracts, is, simply, that as a matter of substantive law, the act of embodying the complete terms of an agreement in a writing, *becomes the contract of the parties.*" (*Nourse* v. *Kovacevich,* 42 Cal.App.2d 769, 771 [109 P.2d 999] ; *Estate of Gaines,* 15 Cal.2d 255, 264-265 [100 P.2d 1055].) ▮ Evidence is admissible to prove the existence of a separate oral agreement as to any matter on which the document is silent and which is not inconsistent with its terms. (*Buckner* v. *Leon & Co.,* 204 Cal. 225 [267 P. 693] ; *Kunz* v. *Anglo & London Paris Nat. Bank,* 214 Cal. 341 [5 P.2d 417] ; *Davis etc. Co.* v. *Advance etc. Wks., Inc.,* 38 Cal.App.2d 270 [100 P.2d 1067].) "The rule that an agreement in writing supersedes all prior or contemporaneous oral negotiations or stipulations concerning its matter has no application to a collateral agreement upon which the instrument is silent, and which does not purport to affect the terms of the instrument." (*Whittier* v. *Home Savings Bank,* 161 Cal. 311, 317 [119 P. 92].) ▮ Parol evidence which is consistent with and in no way changes or contradicts the writing is not excluded as in violation of the parol evidence rule. (*Johnson* v. *Bibb Lumber Co.,* 140 Cal. 95 [73 P. 730] ; *Greathouse* v. *Daleno,* 57 Cal.App. 187 [206 P. 1019] ; *Lacy Mfg. Co.* v. *Gold Crown Mining Co.,* 52 Cal.App.2d 568.)

We are satisfied that the two written contracts, which appellant contends should exclude any oral testimony of warranty or further agreement between the parties, were not, and were not intended to be the complete, integrated agreement of the parties.

The fundamental question is whether the contract of January 27, 1947, was intended by the parties to cover the

obligations of the appellant with regard to the design of the air-conditioning system. First, we have the preliminary negotiations of the parties culminating in the agreement of August 27, 1946. It is apparent that this agreement dealt only with "interior design and decoration," to be done by appellant, and the fees to be paid by respondent to appellant for its services in this regard. We then have the oral negotiations and agreements of the parties. As pointed out previously, the evidence fully sustained the trial court's finding with regard to the oral agreement and warranty concerning appellant's design for the air-conditioning system. If this evidence is inadmissible it must be on the ground that the agreement of January 27, 1947, is the complete, integrated contract between the parties, the terms of which will be varied, altered, or amended by the introduction of such oral testimony.

What did the agreement of January 27, 1947, purport to cover? The opening paragraph relates: "This agreement will serve to amend and supersede our contract of August 19, 1946, accepted August 27, *in accordance with your proposal of January 16, 1947*." (Emphasis added.) As previously outlined, respondent's letter of January 16, 1947, proposed a change in appellant's compensation from its previous percentage basis to a fixed fee of $11,000. At the outset, then, this change in appellant's fee is stated to be the purpose of the contract of January 21, 1947. The second paragraph of the letter indicates the parties' agreement to this arrangement. The $11,000 is for the ". . . work to be undertaken as set out in our contract of August 19th *based upon* (work completed at Ranchinn, and) *work to be completed* at the Commercial Hotel *in accordance with* our drawings and specifications as of January 15, 1947." (Emphasis added.) The drawings and specifications of January 15, 1947, referred to, are simply a list of specifications prepared by appellant for all the work to be done at the Commercial Hotel with a standard form of the American Institute of Architects attached. The reference to these specifications was obviously made only incidentally to fixing the fee to be paid appellant. The remaining two paragraphs of the January 27th agreement also deal with the fee to be paid appellant. ■ The conclusion is inescapable that this contract merely purported and was intended to fix the fee to be paid appellant for its services. As such, it was not a final memorial of the complete agreement of the parties so as to preclude the introduction of

oral evidence concerning the agreement and warranty of appellant that its design would result in a satisfactory air-conditioning system. Such evidence was properly admissible. It does not alter, amend, vary, or add to the terms of the written agreements, but merely supplies the missing terms of the complete agreement between the parties with which the written contracts do not purport to deal. The trial court did not err in the admission of this evidence.

The above holding in regard to the admissibility of the evidence which proved the existence of an express oral agreement and warranty makes it unnecessary to consider whether or not there was also an implied warranty of suitability which was breached by appellant.

Appellant contends that the damages awarded were excessive and unreasonable. Judgment was awarded to respondent in the sum of $18,459.55. This was the sum that the trial court found respondent had expended, and must necessarily expend in order to cause the air-conditioning system to perform satisfactorily.

Appellant states that the damages are "almost punitive in nature" in that the damages awarded would give to respondent "a fully automatic system." This is precisely what the trial court found as a fact that appellant had expressly warranted that its design and plans would produce. In reliance upon appellant's warranty plaintiff went ahead with his plans for an air-conditioning system. Respondent was led by appellant to believe that if he proceeded to put in the system designed by appellant he would get a fully automatic air-conditioning system which would perform satisfactorily. He did not get such a system. To get that which it was warranted to him that he would receive he reasonably and necessarily expended the additional sum of $18,459.55. This sum appears to be the "detriment proximately caused by" the "breach of obligation" as set out in Civil Code section 3300, governing the measure of damages. We find no error in the award of damages.

Judgment affirmed.

Appellant's petition for a hearing by the Supreme Court was denied January 25, 1951.