[No. B073179. Second Dist., Div. Five. June 23, 1994.]

GITANO GROUP, INC., et al., Plaintiffs and Appellants, v.
KEMPER GROUP et al., Defendants and Respondents.

## COUNSEL

Conkle & Olesten, Mark D. Kremer and William C. Conkle for Plaintiffs and Appellants.

Lewis, D'Amato, Brisbois & Bisgaard, Joseph K. Hegedus, Mary G. Whitaker and Lance A. Selfridge for Defendants and Respondents.

## OPINION

**GODOY PEREZ, J.**—Plaintiffs/appellants the Gitano Group, Inc., et al., (appellants),[1] appeal from the judgment entered upon the granting of the motion for summary adjudication of issues made by defendants/respondents the Kemper Group et al., (respondents).[2] Appellant had sued respondents and others for, inter alia, breach of contract in that respondents refused to indemnify and defend appellant in some underlying actions for patent infringement. In respondents' motion, they asserted that the underlying actions did not fall within the purview of the contract of insurance, and as to some of the appellants, there was no duty owed because they were not named insureds. The trial court agreed, ruling that plaintiffs in the underlying actions suffered no harm from appellants' use of their patented product in advertising distinct from the harm suffered from appellant's sale of the infringing product.

For the reasons set forth below, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellants manufacture, use and market clothing, including denim jeans. Appellants engage in about $17 million worth of advertising a year, including television, magazine, newspapers, trade shows, posters, point of purchase items, samples, cooperative advertising with retailers, and fashion shows.

Respondents issued three comprehensive general liability policies to appellants. In pertinent part, these policies had identical language and provided: "II. A. The Company will pay . . . damages because of . . . advertising injury . . . and the Company shall have the right and duty to defend

---

[1]Plaintiffs/appellants are the Gitano Group, Inc., a Delaware corporation and several of its subsidiaries, Bagland, U.S.A., Inc., a New York corporation; Noel Industries, Inc., a Mississippi corporation; the Orit Corporation, a New York corporation; Orit Menswear Company, Inc., a New Jersey corporation, Eva Joia Incorporated, a New York corporation.

[2]As named in the complaint, defendants/respondents are the Kemper Group, American Manufactures Mutual Insurance Company, American Motorists Insurance Company.

any suit against the insured seeking damages on account of such injury even if any of the allegations of the suit are groundless, false or fraudulent." The policies' endorsements defined advertising injury as, "injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan." These policies were in effect during all relevant times.

Respondents issued the subject policies from its offices in New York to an insurance brokerage, representing appellants, Franco & Son, which was also located in New York. Appellants maintained several places of business in New York, and Franco & Son serviced the subject policies from its New York office by acting as an intermediary between appellants and respondents for purposes of communication concerning the policies. Franco & Son accepted some of appellants' premium payments in New York, and New Jersey was the only other state in which appellant made any premium payments.

Appellants were defendants in three underlying patent infringement lawsuits, two of which are relevant to this appeal: Golden Trade S.R.L. v. Jordache Enterprises, Inc. (S.D.N.Y. 1990, No. 90CIV6292 (JMC)) (the *Greater Texas* lawsuit), filed in the federal court in the Southern District of New York; and Ocean Wash, Inc. v. Gitano Group, Inc. (W.D. Tex., 1990, No. 90CA775) (the *Ocean Wash* lawsuit), filed in the federal court for the Western District of Texas. In these suits, plaintiffs were holders of patents, which claimed methods of producing what is commonly called the "acid washed" look. Their respective complaints alleged appellants had committed various forms of patent infringement when they marketed, sold and used certain clothing, produced by the underlying plaintiffs' patented processes.

In pertinent part, the *Greater Texas* lawsuit alleged that appellants "have infringed, are infringing, and inducing others to infringe, and intend to continue infringing and inducing others to infringe the claims of the '213 patent' by using or inducing others to use methods of producing a random faded effect on garments or other cloth products which infringe the '213 patent,' and by making, using or selling products which infringe the claims of the '213 patent.'" The complaint seeks injunctive relief and damages because of appellants' "infringement, inducement of infringement or contributory infringement."

In pertinent part, the *Ocean Wash* lawsuit alleged appellants "infringed one or more claims" of two patents belonging to the underlying plaintiffs,

that they duplicated the plaintiffs' patented process, and that they sold products manufactured in violation of the plaintiffs' patented process. The complaint seeks injunctive relief, enjoining appellants from "infringing plaintiffs' patents, and from selling, marketing, or otherwise disposing of any fabric or denim that is treated by the methods and/or compositions claimed in the patents," and damages from appellants "as a consequence of [their] infringement of said patents, [and their] misappropriation of plaintiffs' trade secrets."

Appellants notified respondents of the *Greater Texas* and *Ocean Wash* actions, and respondents refused to defend either suit.

On May 31, 1991, appellants filed their complaint against respondents, alleging causes of action for breach of contract and bad faith and seeking declaratory relief. In sum, appellants alleged the advertising injury provision of its policies covered the claims of *Greater Texas* and *Ocean Wash*.

Respondents answered, denying any duty to defend or indemnify these actions.

Appellants moved for summary adjudication of the issue that respondents had the duty to defend and indemnify the underlying actions. The court denied the motion, ruling that appellants had failed to show, as a matter of law, that the underlying plaintiffs were claiming damages stemming from appellants' advertising of the infringing product.

Respondents then moved for summary adjudication of the issues. Asserting that New York law applied, respondents contended they owed no duty to defend because the underlying lawsuits sought damages for patent infringement, and, pursuant to New York law, patent infringement claims do not constitute advertising injury. They further asserted that their duty to defend, if any, was due only those insureds named as defendants in the underlying lawsuits, i.e., the Gitano Group, Inc.

In opposition, appellants challenged the applicability of New York law, asserting some activities related to the policies had occurred in New Jersey and California, and in any event, there was no conflict between New York and California law. Among other things, appellants represented as an undisputed fact that the underlying lawsuits did seek damages for the use of the infringing product in appellants' advertising. In support appellants cited the declaration of their counsel, Ben Milam, who defended appellants in the underlying lawsuits. Mr. Milam, in turn, referenced answers to interrogatories in the *Greater Texas* suit and the consent judgment entered in the *Ocean*

*Wash* suit, declaring that these documents evinced that the underlying plaintiffs did seek damages for appellants' use of the infringing products in the course of their advertising activities.

On July 17, 1992, a hearing on the motion was held. The court's tentative decision granted respondents' motion as to the applicability of New York law and respondents' duty to defend. The court invited appellants' counsel to address specifically its concern as to whether the underlying plaintiffs could suffer "any damage or why there's any harm from the advertising as opposed to the sale of the infringing product." The court noted that it had looked beyond the complaint and considered the answers to the interrogatories, but that these answers did nothing more than the complaint and failed to address how the underlying plaintiffs were harmed by the advertising. Counsel requested time to depose the appropriate parties to gather the evidence of the underlying plaintiffs' claim for damages based solely on the advertising. The court clarified its concern, stating, "I'm saying that everything that I look at that you've given me to look at about the underlying action shows there is no harm. That's what I am saying." The court granted a 30-day continuance to allow appellants to conduct further discovery.

On August 14, 1992, the continued hearing was held.[3] The court's tentative ruling remained the same. Counsel objected to being burdened with having to show the underlying plaintiffs suffered actual harm from the advertising. He argued appellants' only burden was to show a "potential" liability. The court acknowledged that any doubts as to the duty to defend were to be resolved in favor of the insured but further noted, "what I don't think I must permit here is for the insured to simply invent the likelihood or the possibility of such coverage and obtain the carriers' defense when there is no actual basis whatsoever that the insured can show for such coverage, and I don't think that the insured can simply go to the underlying plaintiff

---

[3]According to respondents' final memorandum in support of its motion, appellants had filed interrogatory answers in the *Greater Texas* suit and the transcript of the deposition testimony of David Henry, counsel for plaintiffs in the *Ocean Wash* suit. The *Greater Texas* documents indicated that plaintiffs "contended that every use by [appellants] of accused garments, including use of such garments in advertising, has been a proximate cause of damages to the plaintiffs." Answer to interrogatory No. 3 stated, "[Appellants] use of accused garments in its advertising violates plaintiffs' exclusive rights under '213' patent to use such garments." In Mr. Henry's deposition, he testified that he could not recall the contentions of the underlying plaintiffs with respect to the damages they were seeking, and that even if he could, he would feel compelled to assert the attorney-client privilege and the attorney work product doctrine in declining to discuss them. Mr. Henry testified generally with respect to his understanding of patent law, as a patent law attorney. When asked if it was his understanding that using the patented product itself in advertising or promoting would constitute an infringement, he replied, "The use, the unlicensed use of a patented article itself, the making of the article itself which is then used in some other context was an infringement, I would certainly consider the use an infringement."

who is suing him, whose interests are not adverse to the insured on the question of coverage of the insured . . . and simply say to the underlying plaintiff, well, do you contend that you were injured by the advertising; and when the underlying plaintiff says yes, that that's the end of the inquiry."

The court granted the bulk of respondents' motion. The court's minute order explained: "Based upon the complaints in the underlying actions, the responses to discovery and the consent judgment rendered therein, and all other evidence concerning those actions submitted by the parties, it is clear that the wrong for which redress is sought in those actions is the sale of faded jeans without license from, or payment of royalties, to the underlying plaintiffs. There is no reason to believe that the 'advertising activities' of the plaintiffs herein, as opposed to the sale of jeans in alleged infringement of the patent, caused any injury to the underlying plaintiffs [or] in any way motivated them to file or maintain the underlying actions. The statements made by the underlying plaintiffs and by their counsel in responses to discovery do not specify or allege any harm suffered by the underlying plaintiffs as the result of advertising activities, separate or apart from the harm suffered by sales of the infringing product. Under New York law the policy issued by defendant does not cover acts of alleged unfair competition arising out of the manufacturing or sale of goods in violation of another's patents rights. *Meyers* v. *Zurich* (1989) 74 N.Y.2d 298 [546 N.Y.S.2d 818, 545 N.E.2d 1206]. Plaintiffs concede that there is no conflict between New York law and California law on the point, and no California or New Jersey authority is cited that conflicts with *Meyers* v. *Zurich*. The evidence here is no different from the evidence before the trial court in *Meyers* v. *Zurich* when it granted summary judgment. *Meyers* v. *Zurich* has been recently cited by the California Supreme Court in *Bank of the West* v. *Superior Court* . . . , in support of the following: '. . . according to the Bank, there is coverage if any connection, however remote, exists between the . . . advertisements and the . . . practices that harmed the [underlying] plaintiffs, even if the advertisements themselves did not cause harm. [¶] This argument has not found acceptance in other jurisdictions. Those courts that have addressed the issue in published opinions have rejected coverage claims based upon injuries that did not have a causal connection with the insured's advertising activities.' [¶] When this motion originally came on for hearing plaintiffs besought permission to conduct further discovery in an attempt to show that the underlying plaintiffs suffered some articulable harm that was caused by the advertising of faded jeans. Such permission was granted, additional discovery was conducted, and the plaintiffs have been unable to make any showing. In fact, the answers by the underlying plaintiffs to Questions 3 and 8 of the Fourth Set of Interrogatories make it clear that they are unable to articulate any such harm. [¶] Summary Adjudication as to

Issues 5 and 6 are granted. A duty to defend cannot arise in favor of an insured who is not a defendant. Until the insured is sued there is nothing to defend."

## STANDARD OF REVIEW

"Matters summarily adjudicated utilize the same procedural rules as summary judgment motions. 'Summary judgments look behind the pleadings to determine if the claims or defenses of a party are sham or without any evidence to support the claim.' [Citation.] The proponent of the summary judgment must establish that, based upon the declarations presented [citation] and those matters of which courts can take judicial notice [citations], there are no triable issues of fact. . . . [¶] 'We recognize that summary judgment procedures are viewed as "drastic" [citations]; however, the purpose of a summary judgment is to expedite litigation by avoiding needless trials[] [citation]. If there are no triable issues, summary judgment is appropriate. [Citation.]' " (*Starkman* v. *Mann Theatres Corp.* (1991) 227 Cal.App.3d 1491, 1495 [278 Cal.Rptr. 543].)

## DISCUSSION

### 1. *Conflict of Laws*

Appellants assert the summary adjudication procedure was the incorrect manner in which to bring the conflict of laws determination to the court's attention and challenges the propriety of applying New York law. Respondents counter that we must apply New York law but in their argument on the substantive issue also rely upon California authority.

We need not determine whether one method is more appropriate than another because the ruling on which law to apply was one which the court necessarily had to make before considering the motion for summary adjudication.

█ Here, New York, New Jersey, Texas and California are states in which some activities related to the contracts at issue occurred. The contracts were issued by respondents in New York through an insurance brokerage firm also located in New York.[4] Some of the premium payments were made in New Jersey; none were paid in California. California is the forum in

---

[4]An insurance policy is a contract. (Ins. Code, § 22.) It is, therefore, subject to the choice of law provisions codified in Civil Code section 1646. In pertinent part, Civil Code section 1646 provides, "[a] contract is to be interpreted according to the law and usage of the place where it is being performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." This section requires a contract made and

which the instant lawsuit was filed. The underlying patent infringement lawsuits were filed in New York and Texas. Under these circumstances, the trial court was required to first determine whether the laws of New York, California, New Jersey and Texas are "identical." (*Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666].) The court concluded that there was no conflict, noting that appellants had conceded such. We agree.

Federal patent statutes recognize three forms of patent infringement: direct patent infringement; inducing patent infringement; and contributory patent infringement. (35 U.S.C. § 271(a), (b), and (c).) Here, appellants were sued for all three forms of patent infringement in the *Greater Texas* lawsuit, pending in New York; and for direct and contributory infringement in the *Ocean Wash* lawsuit, pending in Texas. Texas and New Jersey have no reported cases interpreting the advertising injury provisions of a comprehensive general liability contract of insurance. Texas and New Jersey laws, therefore, do not conflict with California law.

New York and California each have published cases which discuss this issue. Our discussion below reveals that the holdings of these cases are not in conflict. We conclude, therefore, that the court correctly determined that it could apply both California and New York law—California law because there is no conflict, and New York law because normally we are not precluded from considering the laws of sister states. We further note that the parties cited to New York and California law in the proceedings below and continue to do so on appeal.

2. *The Coverage Issue*

   (a) *Applicable law*

■ *Meyers & Sons* v. *Zurich American Ins.* (1989) 74 N.Y.2d 298 [546 N.Y.S.2d 818, 545 N.E.2d 1206], held that a general comprehensive liability policy, with an advertising injury provision identical to the one before us, applies to false or misleading advertising and does not apply to advertising done as part and parcel of patent infringing manufacture and sale. (*Meyers & Sons Corp.* v. *Zurich American Ins., supra,* 546 N.Y.S.2d at pp. 819, 820-821.) In *Meyers, supra,* the plaintiff had asserted the insurer had a duty to defend, pursuant to the policies' advertising injury provision, in a suit brought before the International Trade Commission. The suit alleged plaintiff had engaged in "unlawful manufacture, importation and sale" of the

---

performed in a foreign state to be interpreted according to the law of that state. (See *Crumley* v. *Walter M. Ballard Corp.* (1950) 100 Cal.App.2d 698, 702 [224 P.2d 455].)

infringing product and engaged in unfair competition. (*Id.*, at p. 819.) Plaintiff argued that the charge of "unfair competition" required the insurer to provide a defense under the "advertising injury" provisions of the policy. (*Id.*, at p. 820.) The court rejected this argument, holding that the complaint alleged harm arising out of the importation and sale of the infringing product, not injury arising out of the plaintiff's advertising. (*Id.*, at p. 821.) The court also rejected plaintiff's argument that a price list it circulated to its customers constituted advertising, concluding that the price list was solely evidence that plaintiff was selling the infringing product, a necessary element of proof in the complaint. (*Ibid.*)

*National Union Fire Insurance Co.* v. *Siliconix, Inc.* (N.D.Cal. 1989) 729 F.Supp. 77, supports a conclusion that advertising as an element of patent infringement does not produce a separate harm. In *Siliconix, supra,* the insured was sued for patent infringement and demanded defense by its insurer pursuant to the "advertising injury" provision of its policy. The *Siliconix* court admitted to "having gone back and forth on the issue" and concluded that the insurer had no duty to defend. (*Id.*, at p. 78.) In *Siliconix,* the parties had agreed that mere advertising, without more, could not constitute actionable patent infringement, and the court cited case authority for this proposition. (*Id.*, at p. 79.) Citing 35 United States Code section 71, the court noted that the infringing act would be the making, using or selling of a patented invention. The insured argued that advertising was "part and parcel" of selling, and therefore the selling of an infringing product was an infringement occurring in the course of advertising. (*Ibid.*) The court disagreed, holding that to accept the insured's argument would "lead to the conclusion that any harmful act, if it were advertised in some way, would fall under the grant of coverage merely because it was advertised. . . . [A] great many acts may fall within the ambit of advertising, extending advertising injury coverage far beyond the reasonable expectations of the insured." (*Id.*, at p. 80.) Thus, the court ruled that patent infringement is not covered as a type of advertising injury. We are in accord with this analysis.

In *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254 [10 Cal.Rptr.2d 538, 833 P.2d 545], our Supreme Court addressed the scope of the coverage afforded by an "advertising injury" provision identical to the one at issue here. In *Bank of the West,* the insured was sued for, among other things, violations of the Unfair Business Practices Act,[5] incorporating violations of the Truth-in-Lending Act. The insured asserted its insurer was required to cover an amount it had paid in settlement, pursuant to its

---

[5]The comprehensive general liability policy "advertising injury" provision in *Bank of the West* included injury in the course of advertising activities, arising out of, inter alia, unfair competition. (*Bank of the West, supra,* 2 Cal.4th at p. 1262.)

"advertising injury" provision because the suit was one for unfair competition, within the meaning of that provision. (*Bank of the West* v. *Superior Court, supra,* 2 Cal.4th at p. 1261.) Among other things, the *Bank of the West* court held that the policy term "unfair competition" did not refer to the conduct prohibited by the Unfair Businesses Act. (*Id.,* at pp. 1265-1266.) The court also articulated an independent basis for its decision finding no coverage, i.e. the lack of the requisite connection between "advertising activities" and "advertising injury." (*Id.,* at p. 1274.) The insured had argued that there would be coverage if any connection, however remote, existed between its advertisements and the lending practices that harmed the underlying plaintiffs, even if the advertisements, themselves, did not cause harm. (*Ibid.*) Citing both *Meyers & Sons Corp.* v. *Zurich American Ins., supra,* and *National Union Fire Ins. Co.* v. *Siliconix, Inc., supra,* the court rejected the insured's position. The court held that as a "matter of interpretation and a matter of common sense" the context of the comprehensive general liability policy "strongly indicates the requirement of a causal connection." (2 Cal.4th at p. 1276.) The court noted that "Virtually every business that sells a product or service advertises, if only in the sense of making representations to potential customers. If no causal relationship were required between 'advertising activities' and 'advertising injuries,' then 'advertising injury' coverage, alone, would encompass most claims related to the insured's business." (*Id.,* at pp. 1276-1277.) The court, therefore, held that " 'advertising injury' must have a causal connection with the insured's 'advertising activities' before there can be coverage." (*Id.,* at p. 1277; accord, *Iolab Corp.* v. *Seaboard Sur. Co.* (9th Cir. 1994) 15 F.3d 1500.)

(b)   *The Present Case*

Appellants contend the court erred, as a matter of law, when it concluded that respondents had no duty to defend, asserting they presented evidence showing there was a "potential" for liability, and questions of material fact exist as to the issue of whether advertising of a patented product creates a distinct injury from that created by the "normal" patent infringement.

Appellants spend some time asserting they suffered injury from the fact that the complaints in the underlying lawsuits were federal notice pleadings. We reject this contention because the record indicates that the trial court offered appellants ample time to collect and present evidence to support their position, considered all this evidence, and did not limit itself to the four corners of the complaint.

The trial court ruled respondents had no duty to defend because it found no causal connection between the advertising of the patented product and the

injury suffered. As noted, the court allowed respondents additional time to conduct discovery to support their contention that the underlying plaintiffs were claiming a separate harm suffered from appellants' advertising of the infringing product. The court could not identify any harm separate from that caused by patent infringement, and we are in accord. The cases cited above leave no doubt that this causal connection is required. (See *Meyers & Sons, supra,* 74 N.Y.2d 298; *Silonix, supra,* 729 F.Supp. 77; and *Bank of the West, supra,* 2 Cal.4th 1251.)

The operative pleadings of the underlying suit generally plead patent infringement by appellants through various means, with the ultimate harm suffered by the use of the infringing process/product in production and sale of jeans. When appellants deposed counsel of the underlying plaintiffs, Mr. Henry, he was unable and unwilling to disclose what exact damages his clients were claiming, asserting both the attorney-client privilege and work product privilege. As evident in footnote 3, *ante,* Mr. Henry did testify generally as an expert in patent law and explained that his practice was to plead any kind of "use," including advertising, to support a claim of infringement. He noted that the cessation of marketing, which necessarily includes advertising, would be a purpose of the underlying suits.

As the court did below, we conclude this testimony by Mr. Henry did not identify a separate harm suffered from the advertising; instead, it bolstered respondents' position that the harm suffered by the underlying plaintiffs stemmed from appellants' use, in a variety of ways, of the infringing process/product. As no separate harm from the advertising could be shown and the requisite causal connection is lacking (*Bank of the West, supra,* 2 Cal.4th 1251), the court ruled correctly.

As to those plaintiffs/appellants in this action, who were not named in the underlying complaints, the court also correctly ruled respondents had no duty to defend or indemnify.

DISPOSITION

The judgment is affirmed.

Grignon, Acting P. J., and Armstrong, J., concurred.