[No. 52143-8-I. Division One. March 15, 2004.]

AMAZON.COM INTERNATIONAL, INC., *Plaintiff*, v. AMERICAN DYNASTY SURPLUS LINES INSURANCE COMPANY, *Appellant*, ATLANTIC MUTUAL INSURANCE COMPANY, *Respondent*.

612

*C. Scott Penner* (of *Carney Badley Spellman*), for appellant.

*Timothy R. Gosselin* (*Gary R. Selvin* of *Selvin Wraith Halman, L.L.P.*, of counsel), for respondent.

ELLINGTON, J.— In a lawsuit against Amazon.com International, Inc., a software manufacturer alleged that Amazon infringed upon its patents by misappropriating its software for use on Amazon's website to market goods for sale to the public. Because the allegations conceivably amounted to an advertising injury covered by Amazon's policy with Atlantic Mutual Insurance Company, Atlantic Mutual had a duty to defend. We therefore reverse sum-

mary judgment in favor of Atlantic Mutual and remand for entry of summary judgment in favor of Amazon's excess carrier, American Dynasty Surplus Lines.

## FACTS

This insurance dispute originated with a lawsuit filed in March 2000 by Intouch Group. Intouch holds patents for interactive music preview technology, which enables customers to listen to samples of music products at kiosks and over the Internet. Intouch alleged Amazon and other defendants had infringed upon those patents; specifically, Intouch alleged Amazon used the Intouch technology to enable customers to preview music products available for sale via Amazon's website.

Amazon tendered its defense to two insurers: Atlantic Mutual Insurance Company, its commercial general liability carrier; and American Dynasty Surplus Lines Insurance Company, an excess carrier. The Atlantic Mutual policy does not expressly cover patent infringement, but does cover advertising injury. The American Dynasty policy covers patent infringement, but only as excess coverage.

Both insurers refused to defend. Amazon initiated a declaratory judgment action against American Dynasty. The parties settled. American Dynasty reimbursed Amazon for its costs in the Intouch litigation, and Amazon assigned its rights against Atlantic Mutual to American Dynasty. American Dynasty then brought this action, alleging that Atlantic Mutual should have provided a defense because Intouch's allegations amounted to an advertising injury.

Both parties sought summary judgment. The trial court granted summary judgment for Atlantic Mutual. American Dynasty appeals.

## DISCUSSION

 The duty to defend is broader than the duty to indemnify and arises whenever a complaint contains any

factual allegation which could render the insurer liable to the insured under the policy.[1] "Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend. If the complaint is ambiguous, it will be liberally construed in favor of triggering the insurer's duty to defend."[2] When the duty to defend cannot be ascertained from the complaint alone, the insurer must consider facts outside the complaint.[3]

■ Amazon's Atlantic Mutual policy covers advertising injury "caused by an offense committed in the course of advertising [its] goods, products or services."[4] Coverage thus exists for advertising injury only if the allegations satisfy the policy definition for advertising injury, and there is a causal connection between the allegations and the insured's advertising activities.[5]

According to Intouch's complaint, Intouch holds patents for technology that "provides a method by which consumers can download and listen to portions of pre-selected music over the Internet."[6] The samples are compressed or otherwise digitally altered. Intouch alleged Amazon used Intouch's technology to enable consumers to preview music available for purchase: "Each of the Defendants has at least one network web site, which allows consumers to preview pre-selected portions of pre-recorded music over the internet . . . . Intouch contends that each of the Defendants' web sites . . . infringe upon the Patents."[7]

---

[1] *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000).

[2] *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002) (citations omitted).

[3] *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425, 983 P.2d 1155 (1999).

[4] Clerk's Papers at 120.

[5] *See, e.g., Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1139 (9th Cir. 2003).

[6] Clerk's Papers at 89.

[7] Clerk's Papers at 89.

Advertising Injury

■ The Atlantic Mutual policy defines "advertising injury" as injury arising from one or more of the following:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. *Misappropriation of advertising ideas* or style of doing business; or

d. Infringement or copyright, title or slogan.[8]

Misappropriation of an advertising idea may be accomplished by the "wrongful taking of another's manner of advertising,"[9] by "the wrongful taking of an idea concerning the solicitation of business and customers,"[10] or by "the wrongful taking of the manner by which another advertises its goods or services."[11] The misappropriation must occur "in the elements of the advertisement itself—in its text, form, logo, or pictures—rather than in the product being advertised."[12]

■ Patent infringement arising from the manufacture of an infringing product is not an advertising injury even if the infringing product is used in advertising.[13] But patent infringement may constitute an advertising injury *"where an entity uses an advertising technique that is itself pat-*

---

[8] Clerk's Papers at 124 (emphasis added).

[9] *Am. States Ins. Co. v. Vortherms*, 5 S.W.3d 538, 543 (Mo. Ct. App. 1999); *Fluoroware, Inc. v. Chubb Group of Ins. Cos.*, 545 N.W.2d 678, 682 (Minn. Ct. App. 1996).

[10] *Green Mach. Corp. v. Zurich-Am. Ins. Group*, 313 F.3d 837, 841 (3d Cir. 2002); *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 748 (3d Cir. 1999).

[11] *Applied Bolting Tech. Prods., Inc. v. United States Fid. & Guar. Co.*, 942 F. Supp. 1029, 1034 (E.D. Pa. 1996).

[12] *Iolab Corp. v. Seaboard Sur. Co.*,15 F.3d 1500, 1506 (9th Cir. 1994).

[13] *Id.* ("While patent infringement can be piracy of the advertised product, generally it is not piracy of the elements of the advertisement itself.").

*ented.*"[14] That was the essence of Intouch's allegation against Amazon.[15] Giving the required liberal construction to the pleadings, Intouch alleged that its patented music preview technology was an element of Amazon's advertisement. The Intouch complaint thus conceivably alleged misappropriation of an idea concerning the solicitation of business and customers.

Course of Advertising

■■ An advertising injury must occur in the course of advertising goods for sale. "Advertising" normally refers to " 'any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business.' "[16] It may also involve the "widespread distribution of promotional material to the public at large."[17] Amazon's website exists for the purpose of promoting products for sale to the public. This is advertising. Intouch's complaint thus implicitly alleged that Amazon used its product in its course of advertising.

---

[14] *Id.* at 1507 n.5 (emphasis added) (citing *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1275, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (1992)); *see also State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am.*, 343 F.3d 249, 258 & n.12 (4th Cir. 2003) (trademark that serves to promote a company's products to the public is an advertising idea, and not merely a label or identifier).

[15] In the event this was not clear from the complaint, Intouch filed a claim chart in support of its complaint pursuant to the requests of federal patent local rule 3.6 (N.D. Cal. 2001) in which it detailed this allegation:

> After entering the AMAZON.COM web site, users can navigate through the AMAZON.COM music area and view various music products, such as CD's, that are available for purchase on-line. The AMAZON.COM music web site also provides the user the ability to choose pre-selected portions of pre-recorded music products by clicking on an icon that identifies a music product available for preview.

Clerk's Papers at 42-43.

[16] *State Auto Prop. & Cas. Ins. Co.*, 343 F.3d at 259 (quoting *Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1377 (11th Cir. 1998)).

[17] *Vortherms*, 5 S.W.2d at 542, 544.

## Causal Connection Between Advertising and Injury

■ An advertising injury must also have a causal connection with the insured's advertising activities.[18] That is, the advertising activities must cause the injury, not merely expose it; an injury that could have occurred independent and irrespective of any advertising is not an advertising injury.[19]

This causal requirement is the reason most patent infringement claims do not constitute advertising injuries. The basis of such claims is typically the sale of infringing products, not their advertisement.[20] Nor does an advertising injury occur where the injury is caused by the subsequent advertising of an already infringing product.[21]

Atlantic Mutual contends that a software program embedded in a website cannot satisfy the causation requirement for an advertising injury. Atlantic relies particularly upon *Microtec Research, Inc. v Nationwide Mutual Insurance Co.*[22] But the facts and issues there were different. In *Microtec*, a software company allegedly passed off a competitor's software as its own, misleading customers "into

---

[18] *Simply Fresh Fruit, Inc. v. Cont'l Ins. Co.*, 94 F.3d 1219, 1221 (9th Cir. 1996) (citing *Bank of the W.*, 2 Cal. 4th at 1277).

[19] *Id.* at 1222-23.

[20] *Id.* (quoting *Iolab*, 15 F.3d at 1506) ("a patent is infringed by making, *using,* or selling a patented invention, not by advertising it") (emphasis added). As American Dynasty points out, the 1994 amendment to the patent law allowing an infringement claim to be based on an offer to sell has removed any suggestion that patent infringement cannot occur in the course of an insured's advertising activities as a matter of law. *See Homedics*, 315 F.3d at 1139 (recognizing the basis for such holdings as invalidated by recent changes in patent law). But because Intouch's complaint alleges an infringement based on Amazon's *use* of its patented product, the 1994 amendments do not affect the outcome here.

[21] *See, e.g., Simply Fresh Fruit*, 94 F.3d at 1222-23 (allegation that defendant infringed on patent for automated fruit slicer and then advertised improved product did not meet causation requirement for advertising injury); *Microtec Research, Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968, 971 (9th Cir. 1994) (harm caused by misappropriation of competitor company's software code, not by subsequent advertising that might have misled customers); *Gitano Group, Inc. v. Kemper Group*, 26 Cal. App. 4th 49, 60, 31 Cal. Rptr. 2d 271 (1994) (infringement of patented method for acid washing jeans, where the jeans were later advertised, did not constitute advertising injury).

[22] 40 F.3d 968, 971 (9th Cir. 1994).

thinking [it] was capable of writing leading edge compiler code as good as [the competitor's]."[23] As the circuit court noted, however, there was no allegation that Microtec used the stolen code in its advertising. Injury resulted from Microtec's misappropriation of the code, not from any advertising, and there was thus no advertising injury under the policy.[24]

By contrast here, the alleged injury derived not merely from misappropriation of the code, but from *its use as the means to market goods for sale*. In other words, the infringement occurred in the advertising itself. Intouch's allegations therefore satisfied the causation requirement for a potential advertising injury.[25]

Atlantic Mutual had a duty to defend Amazon unless the injuries alleged by Intouch were clearly not covered by the policy. Because the injuries were conceivably covered, Intouch's complaint triggered Atlantic Mutual's duty to defend. As Amazon's assignee, American Dynasty was entitled to summary judgment in its favor.

Attorney Fees

American Dynasty requests attorney fees under *Olympic Steamship Co. v. Centennial Insurance Co.*[26] Atlantic Mutual resists this request and relies upon *Litho Color, Inc. v. Pacific Employers Insurance Co.*,[27] contending that American Dynasty is not entitled to fees because there is no privity between the parties on appeal. In *Litho Color*, however, there was no evidence of a contractual link between the insured and the reinsurer from which it sought to

---

[23] *Id.*

[24] *Id.*

[25] Atlantic Mutual also argues in passing that Intouch's injury cannot have been caused by Amazon's advertising because customers would not have been aware that they were using an infringing product. Whether the customer knows about the infringement is irrelevant.

[26] 117 Wn.2d 37, 811 P.2d 673 (1991).

[27] 98 Wn. App. 286, 303-04, 991 P.2d 638 (1999).

collect.[28] Amazon's assignment of rights extended its contractual privity with Atlantic Mutual to American Dynasty. Further, as an excess insurer, American Dynasty possesses the same rights against the primary insurer as does the insured.[29] American Dynasty is thus entitled to its fees herein. The trial court on remand shall determine and award reasonable fees for all proceedings.

Reversed and remanded for entry of summary judgment in favor of American Dynasty, and for a fees award.

BAKER and KENNEDY, JJ., concur.

Review denied at 152 Wn.2d 1030 (2004).

---

[28] *Id.*

[29] *See First State Ins. Co. v. Kemper Nat'l Ins. Co.*, 94 Wn. App. 602, 611, 971 P.2d 953 (1999).