# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HYUNDAI MOTOR AMERICA,
           *Plaintiff-Appellant,*

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA;
AMERICAN HOME ASSURANCE
COMPANY,

           *Defendants-Appellees.*

No. 08-56527

D.C. No.
CV-08:00020-JVS-
RNB

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted
February 3, 2010—Pasadena, California

Filed April 5, 2010

Before: Betty B. Fletcher, Harry Pregerson, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Graber

## COUNSEL

Gene C. Schaerr, Winston & Strawn LLP, Washington, D.C., for the plaintiff-appellant.

Richard H. Nicolaides, Jr., Bates & Carey LLP, Chicago, Illinois, for the defendants-appellees.

## OPINION

GRABER, Circuit Judge:

After Plaintiff Hyundai Motor America ("Hyundai") placed certain features on its website, a third party sued Hyundai for patent infringement. Hyundai sought a defense from its liability insurers, Defendants National Union Fire Insurance Company of Pittsburgh and American Home Assurance Company. Because the alleged patent infringement concerned one of Hyundai's advertising methods, Hyundai concluded that the third-party suit alleged an "advertising injury," as that term is defined in the insurance policy. Defendants disagreed and declined to defend Hyundai, which defended itself. Hyundai later sued Defendants in this diversity action, seeking to recover its defense costs in the earlier third-party action. The district court agreed with Defendants that the alleged patent infringement did not constitute an "advertising injury" under the insurance policy and granted summary judgment to Defendants. On de novo review, *Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938, 940 n.2 (9th Cir. 2009), we reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

Like most (if not all) major corporations, Hyundai maintains a website. At issue here are two features of the website: a "build your own vehicle" ("BYO") feature and a parts catalogue feature. The BYO feature allowed users to navigate through a series of questions on a menu (to select, for example, colors, engine and transmission types, and options). In response to the user's input, the BYO feature displayed customized vehicle images and pricing information. The parts catalogue feature similarly allowed users to navigate through a series of menus (to choose, for example, a model, engine system, and sub-system) and displayed customized parts images and pricing information.

Orion IP, LLC ("Orion"), a patent-holding company, holds the rights to two patents that are relevant here. Patent Number 5,615,342 ("'342 patent") concerns a method of generating customized product proposals for potential customers of an automobile dealer. The patent explains that "preprinted brochures" used by car dealerships are under-inclusive, because they can show pictures of only a few combinations of cars, despite the many different options available. At the same time, a preprinted brochure is over-broad, because it contains a complicated pricing matrix, much of which "is not of interest to a particular customer, since the customer will typically be interested in the price for a single, or relatively few, combinations of options for the car." "In containing all of this varied and generic information in an attempt to be 'all things to every customer,' the preprinted brochures actually are of limited value to any particular customer." The patent description also notes that these brochures become quickly out of date because of price changes and unavailable models. "The present invention solves these problems by utilizing a computer-based system to dynamically create customized, printed proposals for potential purchasers of a product." The patent's abstract states that the invention is "[a]n electronic system for creating customized product proposals [that] stores a plurality

of pictures and text segments to be used as building blocks in creating the proposal." "The system queries a user to determine a customer's needs and interests. Based upon the answers to the queries, the system selects the appropriate picture and text building blocks to fill in proposal templates." "Based upon the customer's answers to the queries, the system links product pictures, environment pictures, and textual descriptions together in a customized proposal." "Since each proposal is customized for a particular customer, each proposal will have a much more persuasive effect in selling the product."

Patent Number 5,367,627 ("'627 patent") concerns a similar method, but is aimed at the sale of parts. The '627 patent is aimed at aiding parts salespersons and works much the same way as the '342 patent.

In 2005, Orion sued Hyundai and nineteen other car companies for patent infringement. Orion alleged that Hyundai's BYO feature infringed the '342 patent and that its sales parts catalogue infringed the '627 patent. Specifically, in two paragraphs that, except for the patent number, are worded identically, Orion alleged:

> Defendant Hyundai has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '342 patent [or '627 patent] in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, methods practiced on its various websites (including but not limited to www.hyundaiusa.com) making and using supply chain methods, sales methods, sales systems, marketing methods, marketing systems and inventory systems covered by one or more claims of the '342 patent [or '627 patent] to the injury of Orion.

Hyundai sought a defense from its insurers, Defendants. Defendants had issued an insurance policy to Hyundai with the following pertinent provisions:

### COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1.  Insuring Agreement**

> **a.** . . . We [Defendants] will have the right and duty to defend the insured against any "suit" seeking those damages [caused by, among other things, "advertising injury"]. . . .
>
> **b.** This insurance applies to: . . .
>
>     . . . .
>
> (2)    "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services . . . .

. . . .

### SECTION V — DEFINITIONS

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

> **a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> **b.** Oral or written publication of material that violates a person's right of privacy;

    **c.** Misappropriation of advertising ideas or style of doing business; or

    **d.** Infringement of copyright, title, or slogan.

(Emphasis added.)

Hyundai asserted that Defendants had a duty to defend Hyundai because Orion's claims constituted allegations of, among other things, "[m]isappropriation of advertising ideas." Defendants disputed that interpretation of the coverage and declined to defend Hyundai. Hyundai thereafter defended itself in the Orion action. A jury found against Hyundai and awarded the patent-holder $34 million in damages.

Hyundai then filed this action against Defendants in federal district court. Hyundai alleges four state-law claims, all of which proceed from the premise that the insurance policy obligated Defendants to defend Hyundai in the patent-holder's action. Hyundai seeks declaratory relief and its reasonable costs of defense but does not seek to recover the amount of the jury verdict.

The district court granted summary judgment to Defendants. The court held that patent infringement is not an "advertising injury." The court also held, as an alternative basis for granting summary judgment, that Hyundai was "unable to demonstrate a causal connection between its advertising[ ] and Orion's alleged injury." The court did not reach the question whether the BYO feature and the online parts catalogue "constitute 'advertising' as defined by the relevant California authority."

Hyundai timely appeals.

## DISCUSSION

Hyundai argues that the Orion action constituted a lawsuit alleging an "advertising injury" under the duty to defend

clause in the insurance policy. More specifically, Hyundai argues that the patent infringement claims in the Orion action were claims alleging the "misappropriation of advertising ideas."

[1] California law governs in this diversity action. *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008); *see generally Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (describing the method for determining questions of state law). Under California law, interpretation of an insurance policy "is a question of law." *Hameid v. Nat'l Fire Ins. of Hartford*, 71 P.3d 761, 764 (Cal. 2003).

> An insurance policy is a contract between the insurer and the insured. As with all contracts, the mutual intention of the parties at the time the contract is formed governs interpretation. The parties' intent is inferred from the "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless used by the parties in a technical sense or a special meaning is given to them by usage. Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning.

*Id.* (citation, ellipses, and some internal quotation marks omitted).

[2] The general principles governing "duty to defend" clauses are well settled. "Liability insurers owe a duty to defend their insureds for claims that potentially fall within the policy's coverage provisions. The carrier must defend a suit which *potentially* seeks damages within the coverage of the policy." *Id.* (internal quotation marks omitted). The obligation to defend "can be excused only when the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Lebas Fashion*

*Imps. of USA, Inc. v. ITT Hartford Ins. Group*, 59 Cal. Rptr. 2d 36, 40 (Ct. App. 1996) (emphasis and internal quotation marks omitted). This presumption in favor of the insured applies to factual disputes, but not legal disputes. *Id.* "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Id.* But "it is settled that a potential for coverage cannot be based on an unresolved legal dispute concerning policy interpretation which is ultimately resolved in favor of the insurer." *Id.* In other words, if the unresolved legal dispute ultimately is resolved in a way showing that the insurer had no duty to defend, then the insurer has no liability to the insured. Otherwise the insurer is liable to the insured. We turn, then, to the legal question whether Defendants had a duty to defend Hyundai.

> Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy. But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered. Moreover, that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.

*Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d 460, 466 (Cal. 2005) (citations omitted).

[3] The California Supreme Court has specified three required elements to establish a duty to defend for an "advertising injury":

> [I]n order for [Hyundai] to have a reasonable expectation of coverage under [Defendants'] policy for "advertising injury" [it] must show that: (1) [it] was engaged in "advertising" during the policy period

> when the alleged "advertising injury" occurred; (2) [Orion's] allegations created a potential for liability under one of the covered offenses (i.e., misappropriation of advertising ideas); and (3) a causal connection existed between the alleged injury and the "advertising."

*Hameid*, 71 P.3d at 764-65. The parties dispute all three elements.

## A.   *"Advertising"*

The term "advertising" means "widespread promotional activities usually directed to the public at large," but it does *not* encompass "solicitation." *Id.* at 766. Plaintiff argues that it placed the BYO feature[1] on its website to promote its products; a website is plainly directed to the public at large; therefore, the BYO feature constitutes "advertising." Defendants respond that, because the BYO feature creates customized proposals specific to an individual user, the BYO feature effectively is high-tech one-on-one solicitation. The district court did not reach this issue, because it held that Hyundai cannot meet the other two requirements.

**[4]** As noted above, "[d]etermination of the duty to defend depends, in the first instance, on a comparison between the allegations of the [third-party] complaint and the terms of the policy." *Scottsdale Ins.*, 115 P.3d at 466. The reason for this rule is that, when the insurer is presented with the opportunity

---

[1]Orion's complaint alleged infringement by Hyundai both through its BYO feature and through its electronic sales parts catalogue. But "the insurer must defend the entire action even when only one of several causes of action is potentially covered." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 959 P.2d 265, 273 (Cal. 1998). Because we conclude that Defendants had a duty to defend with respect to the claim concerning the BYO feature, we need not—and do not—discuss the patent infringement claim concerning the electronic sales parts catalogue. Our discussion in text concerns the BYO feature only.

to defend, the insurer has, at a minimum, a copy of the complaint. *Rombe Corp. v. Allied Ins. Co.*, 27 Cal. Rptr. 3d 99, 103 (Ct. App. 2005). Here, Orion alleged that Hyundai's BYO feature constituted "making and using supply chain methods, sales methods, sales systems, *marketing methods, marketing systems* and inventory systems." (Emphasis added.) Orion evidently viewed the BYO feature as, at least in part, "marketing methods" or "marketing systems" and described the feature as such in its complaint. The description in the third-party complaint—"marketing methods" or "marketing systems"—fits squarely within the definition of "advertising" —"widespread promotional activities usually directed to the public at large," *Hameid*, 71 P.3d at 766. Comparing the third-party complaint with the insurance policy, as the California Supreme Court requires, *Scottsdale Ins.*, 115 P.3d at 466, we conclude that Orion's complaint alleged "advertising" activities.

In some circumstances, however, we also may consider "extrinsic facts known to the insurer." *Id.* Here, it is safe to assume that Defendants had access to Hyundai's website and could view the BYO feature in making their determination whether to defend.[2] Relying on the California Supreme Court's decision in *Hameid*, Defendants argue that each user's invocation of the BYO feature constitutes an individualized "solicitation."

In *Hameid*, the plaintiff hairdresser left his employer and started a new beauty parlor. 71 P.3d at 763. The former employer "sued Hameid for stealing its customer list and

---

[2]Even if the duty to defend is not evident on the face of the complaint, the duty to defend nevertheless arises if the extrinsic facts suggest that the claim may be covered. *Scottsdale Ins.*, 115 P.3d at 466. It is unclear whether the opposite proposition holds. That is, it is unclear whether, as Defendants urge here, extrinsic facts may be considered in order to *defeat* an otherwise apparent duty to defend. Because we reach the same conclusion either way, we need not resolve this question nor decide whether viewing the BYO feature on the website constitutes "extrinsic facts."

soliciting its customers." *Id.* The court addressed Hameid's argument that "advertising" should be interpreted to include solicitation. *Id.* at 765. The court surveyed the existing case law and sided with the majority approach, which requires "widespread distribution of promotional material to the public at large." *Id.* at 765-69 (internal quotation marks omitted). Applied to the case at hand, the court held that Hameid's agents

> made telephone calls and sent mailers to [the former employer's] customers advising them of their new location and of Hameid's lower prices. These activities strongly resemble the solicitations of a competitor's customers in [one case]; the recruiting letters to a competitor's employees in [another case]; and the subcontractor's submission of bids in [a third case] —all of which were held to be "solicitation," not "advertising."

*Id.* at 769-70; *see also Rombe*, 27 Cal. Rptr. 3d at 107 (holding that an in-person breakfast meeting with clients constitutes "solicitation" and not "advertising" under *Hameid*); *Hayward v. Centennial Ins. Co.*, 430 F.3d 989, 992 (9th Cir. 2005) (holding that a third-party claim for wrongful solicitation absolved the insurer of the duty to defend because, under *Hameid*, solicitation is not advertising).

Defendants correctly observe that the BYO feature has some similarities to solicitation. After all, the BYO feature does little, if anything, until the user inputs some personal preferences. The patent's raison d'etre is to create *customized* proposals, *specific to an individual user*. In this way, each invocation of the BYO feature by a given user is somewhat similar to an individualized solicitation like the ones discussed in *Hameid*.

But Defendants' attempt to fit the BYO feature into the framework of *Hameid* ultimately is unpersuasive. The court in

*Hameid* focused on the fact that the solicitations were *limited to a discrete number of known potential customers*. It rejected a characterization of that form of solicitation as "advertising," because it was not widely distributed to the public at large. Here, the BYO feature *is* widely distributed to the public at large, to millions of unknown web-browsing potential customers, even if the precise information conveyed to each user varies with user input. All the users are still using the same BYO feature.

An analogy to a hypothetical invention in the pre-Internet age helps to illustrate why the BYO feature advertises cars to the general public. Instead of the high-tech, Internet version of the BYO feature, imagine a more crude, paper-only version. The invention includes tabbed sliders and plastic overlays; the user chooses various options and follows directions to assemble the various physical parts. The resulting composite display shows the user's choices, along with pricing information displayed in a cut-out window. And imagine that Hyundai included one of these crude forms of the BYO feature as an insert in a general-circulation newspaper. It seems clear that this "invention" would constitute "advertising," even though the individual newspaper readers might each select different options and arrive at entirely different final "displays." Hyundai's BYO feature is much more akin to that example than it is to the individualized solicitations sent to a specified, extant customer list discussed in *Hameid*, or to the other individualized solicitations discussed in that case.

We conclude that the BYO feature constituted "advertising."

B. *Patent Infringement as Misappropriation of Advertising Ideas*

**[5]** Hyundai next must establish that Orion's patent infringement claim constituted a "misappropriation of advertising ideas." In *Mez Industries, Inc. v. Pacific National Insur-*

*ance Co.*, 90 Cal. Rptr. 2d 721, 733 (Ct. App. 1999), the California Court of Appeal explained that a "contextual reasonableness" analysis applies to that question. We must determine, in the context of the case and in light of common sense, whether a lay person reasonably would read the phrase "misappropriation of advertising ideas" to include the patent infringement claim at issue. *Id.* More precisely, the proper test is whether the patents at issue "involve any process or invention which could reasonably be considered an 'advertising idea.' " *Id.*

We have applied the test described by *Mez*:

> The court [in *Mez*, 90 Cal. Rptr. 2d at 733,] noted that the patents at issue "did not involve any process or invention which could reasonably be considered an 'advertising idea' or 'a style of doing business.' "
>
> Similar to *Mez*, the underlying [third-party] actions at issue here do not *allege violation of a method patent involving advertising ideas* or a style of doing business. Like the allegations that Mez was inducing infringement of a design patent in airflow conduction systems, the [third-party] actions allege violation of a design patent for certain therapeutic magnetic devices.

*Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1140-41 (9th Cir. 2003) (emphasis added). Although neither we nor the California courts affirmatively have held that certain types of patent infringement can constitute advertising injuries, the implication in *Mez* and *Homedics* is clear: Depending on "the context of the facts and circumstances of th[e] case," patent infringement can qualify as an advertising injury if the patent "involve[s] any process or invention which could reasonably be considered an 'advertising idea,' " *Mez*, 90 Cal. Rptr. 2d at 733 (emphasis omitted); or, expressing the same idea in different words, if the third party "allege[d] violation of a

method patent involving advertising ideas," *Homedics*, 315 F.3d at 1141.

**[6]** Unlike in *Mez* and *Homedics*, the third party here *did* allege "violation of a method patent involving advertising ideas." *Id.* Orion patented a method of displaying information to the public at large for the purpose of facilitating sales, i.e., a method of advertising. And Orion's complaint alleged that Hyundai violated that method patent by using the patented techniques as part of its own "marketing method" or "marketing system." In other words, Orion patented a "process or invention which could reasonably be considered an 'advertising idea,' " *Mez*, 90 Cal. Rptr. 2d at 733, and Orion "allege[d] violation of a method patent involving advertising ideas," *Homedics*, 315 F.3d at 1141. "In the *context of the facts and circumstances of this case*," *Mez*, 90 Cal. Rptr. 2d at 733, Orion's patent infringement claim alleged the "misappropriation of advertising ideas."

Defendants attempt to rebut that conclusion on two grounds. First, they argue that a "misappropriation of advertising ideas" must relate to the actual *content* of the challenged advertisement. In support, Defendants quote our holding that, to constitute an advertising injury, the third-party claim must concern the "elements *of the advertisement itself* —in its text[,] form, logo, or pictures—rather than in the product being advertised." *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506 (9th Cir. 1994). Defendants' reliance on that quotation is misplaced because the BYO feature at issue in the Orion action easily meets that test. The BYO feature is the "form" "of the advertisement itself," i.e., a build-your-own-vehicle module, and plainly is not "the product being advertised," i.e., motor vehicles. Defendants' reliance on other cases is similarly misplaced. *See, e.g.*, *Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc.*, 97 F. Supp. 2d 913, 927 (S.D. Ind. 2000) ("Environ simply does not claim . . . that the piping product that APT allegedly took was inherently *an idea on how to advertise*. Rather, Environ alleged that APT

unfairly competed with it by stealing its product and claiming the piping as its own, a distinctly different claim from alleging that APT took an idea about how to . . . advertise the underground piping product." (emphasis added)).

Second, Defendants argue that the source of the advertising idea must be from a competitor. Because Orion is a patent-holding company and not a direct competitor of Hyundai's, Defendants reason, the Orion action cannot constitute a "misappropriation of advertising ideas." As an initial matter, nothing in the policy's text—"misappropriation of advertising ideas"—suggests that it must be a misappropriation of *a competitor's* advertising ideas. Nor can we discern any contextual, public-policy, or logical significance to who owns the legal rights to the advertising idea in question. In any event, we find no support for Defendants' competitor-only rule in California law.

In conclusion, we acknowledge that the California courts, and we, have rejected past claims that a patent infringement constitutes an advertising injury. But both the California courts and our court, applying California law, have held that a contextual analysis applies and have recognized that infringement of a patented advertising method could constitute a misappropriation of advertising ideas. In the context of the facts of this case, we conclude that the Orion action contained allegations of misappropriation by Hyundai of a patented advertising method.

We find support for our conclusion in the persuasive authority, *Amazon.com International, Inc. v. American Dynasty Surplus Lines Insurance Co.*, 85 P.3d 974 (Wash. Ct. App. 2004) (applying Washington law).[3] In that case, Ama-

---

[3]Defendants are correct, of course, that *Amazon.com* is not *binding* authority, because it was applying Washington law and not California law. It is nevertheless *persuasive* authority. We also note that, in the relevant portions of its analysis, block-quoted in text, the Washington court cited our case that did apply California law. It appears that there is little difference between Washington law and California law in these respects.

zon.com used music-preview technology on its website; a company named Intouch sued Amazon.com for patent infringement; and Amazon.com's insurers declined to defend it. *Id.* at 975-76. In addressing Amazon.com's claim against the insurers, the court held:

> The misappropriation [of advertising ideas] must occur "in the elements of the advertisement itself— in its text, form, logo, or pictures—rather than in the product being advertised." [*Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506 (9th Cir. 1994).]
>
> Patent infringement arising from the manufacture of an infringing product is not an advertising injury even if the infringing product is used in advertising. [*Id.*] But patent infringement may constitute an advertising injury "*where an entity uses an advertising technique that is itself patented.*" [*Id.* at 1507 n.5.] That was the essence of Intouch's allegation against Amazon. . . . Intouch alleged that its patented music preview technology was an element of Amazon's advertisement. The Intouch complaint thus conceivably alleged misappropriation of an [advertising] idea . . . .

*Amazon.com*, 85 P.3d at 977 (footnotes omitted; footnote citations in brackets). The same analysis applies here: Hyundai "use[d] an advertising technique that is itself patented," and "[t]hat was the essence of [Orion's] allegation against [Hyundai]." *Id.*

C.   *Causal Connection*

Finally, a causal connection must link the advertisement and the alleged advertising injury. As is the case with the previous element, courts have found no causal connection when the patents that the insured allegedly infringed concerned the underlying product for sale. But those same cases have noted

or implied that a causal connection would exist in situations like this one, where the patent concerns the method of advertising. When the advertisement itself infringes on the patent, the causal connection requirement is met.

In *Iolab*, 15 F.3d at 1502, Iolab manufactured and sold an intraocular lens. A patent holder sued Iolab for patent infringement concerning the manufacture and sale of the lens, and Iolab's insurer refused to defend it. *Id.* at 1502-03. Iolab sued its insurer and alleged that the patent infringement claim alleged an "advertising injury." *Id.* at 1503. Iolab insisted that it was an advertising injury because its advertisement of the lens had exposed it to the litigation. *Id.* at 1506. We disagreed. *Id.* We held that there was no causal connection because the patent infringement "claim against Iolab was not based on the advertising of the intraocular lens." *Id.* at 1507. In a footnote, we wrote: "Although the issue is not before us, . . . where an entity uses an advertising technique that is itself patented, a court might possibly hold that the infringement arises out of or is committed in the advertising." *Id.* at 1507 n.5.

Similarly, in *Everest & Jennings, Inc. v. American Motorists Insurance Co.*, 23 F.3d 226, 229 (9th Cir. 1994), we held:

> Even if true [that E & J advertised the patent-infringing product and that advertisement brought the infringement to the patent-holder's attention], these facts simply do not establish the necessary causal connection between the alleged infringement and E & J's advertising. Burke's claim never asserted that the infringement occurred because of E & J's advertising, much less that E & J's advertising infringed Burke's patent *independent* of E & J's manufacture and sale of the product.

*See also Bank of W. v. Superior Court*, 833 P.2d 545, 559 (Cal. 1992) ("[A] claim of patent infringement does not occur

in the course of advertising activities within the meaning of the policy even though the insured advertises the infringing product, if the claim of infringement is based on the sale or importation of the product *rather than its advertisement*." (emphasis added) (alterations and internal quotation marks omitted)).

In *Simply Fresh Fruit, Inc. v. Continental Insurance Co.*, 94 F.3d 1219, 1220 (9th Cir. 1996), a third-party competitor, Reddi-Made, alleged that Simply Fresh Fruit stole its secret (and patented) automated method for cutting fruit, by hiring former Reddi-Made employees. Simply Fresh Fruit's insurers refused to defend, and Simply Fresh Fruit filed suit against its insurers. *Id.* at 1221. In that suit, Simply Fresh Fruit alleged that Reddi-Made did not know about the patent infringement until Simply Fresh Fruit began advertising its well-cut fruit. *Id.* at 1223. Simply Fresh Fruit thus concluded that the patent infringement claims were advertising injuries. *Id.* at 1222-23.

**[7]** We rejected that argument for the obvious reason that the advertising itself did not violate any patents; it simply tipped off Reddi-Made. *Id.* at 1223. "[T]he *advertising activities* must *cause* the injury—not merely expose it." *Id.*; *see also Microtec Research, Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968, 971 (9th Cir. 1994) ("It is now the clearly established law in California . . . that the injury for which coverage is sought must be caused by the advertising itself."). In *Simply Fresh Fruit*, "Reddi-Made's federal claims for direct, contributory and inducing infringement all accrued when Simply Fresh . . . allegedly used its patented devices and processes." 94 F.3d at 1222.

In summary, we must determine whether the advertising itself constituted the (injurious) use of the patented method. *See, e.g.*, *id.* at 1223 (noting that "the *advertising activities* must *cause* the injury"). When the patent infringement occurs independent of the actual advertisement of the underlying product, because the patent concerns the underlying product

(either the product itself or the method of creating the product), then the causal connection typically[4] is not established, even when the advertising exposes the infringement. When the patent infringement occurs in the course of the advertising, however, the causal connection is established.

**[8]**  Here, the use of the BYO feature in the website is itself an infringement of the patent because it is the use of the BYO feature that violates the patent (and not the design of the car, for instance, or the method of manufacturing the car, or the car's engine, or *anything* related to the car for sale). Furthermore, and critically, it is *that use* that caused the injuries alleged by Orion. *See* Orion's complaint ("Hyundai has been and now is directly infringing . . . the '342 patent . . . by, among other things, methods practiced on its various websites . . . using . . . marketing methods [and] marketing systems . . . covered by one or more claims of the '342 patent to the injury of Orion."). Accordingly, there is a direct causal connection between the advertisement (i.e., the use of the BYO feature on the website) and the advertising injury (i.e., the patent infringement). Because the use of the patented method was itself an advertisement that caused the injuries alleged in the third-party complaint, Hyundai has established the requisite causal connection.

It is irrelevant whether Hyundai theoretically could have violated the patent in some way other than in its advertising. The proper inquiry asks, with respect to what actually occurred, whether the advertising itself caused the injury, that is, whether the advertising itself was the improper use of the patented method. Again, we find persuasive the Washington Court of Appeals' analysis in *Amazon.com*: "[H]ere, the alleged injury derived not merely from misappropriation of the [patented software], but from *its use as the means to mar-*

---

[4]There may be situations in which an advertisement induces another to infringe a patent. We do not reach the question whether the required causal connection could be established in that situation.

*ket goods for sale*. In other words, the infringement occurred in the advertising itself. [The third party's] allegations therefore satisfied the causation requirement for a potential advertising injury." 85 P.3d at 978.

## CONCLUSION

**[9]** The third-party patent infringement claims here alleged that Hyundai's web-based advertisement violated the third party's advertising-method patents. We hold that, in the context of the facts of this case, the third-party patent infringement claims constituted allegations of "misappropriation of advertising ideas" for purposes of the insurance policy. We therefore reverse the district court's grant of summary judgment to Defendants on all claims. We remand with instructions to grant summary judgment to Hyundai on the first claim for declaratory relief on the duty to defend and with instructions to conduct any further proceedings, if necessary, on Hyundai's other three claims.

**REVERSED** and **REMANDED** with instructions.