RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0260p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

RICHARD A. GANIM, JR.,

          *Plaintiff-Appellant,*

    *v.*

COLUMBIA CASUALTY COMPANY,

          *Defendant-Appellee.*

No. 08-3945

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-01497—Patricia A. Gaughan, District Judge.

Argued: June 9, 2009

Decided and Filed: July 23, 2009

Before: MARTIN, RYAN, and SUTTON, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** Michael David Zaverton, WALTER & HAVERFIELD LLP, Cleveland, Ohio, for Appellant. Andrew L. Margulis, ROPERS, MAJESKI, KOHN & BENTLEY, New York, New York, for Appellee. **ON BRIEF:** Mark S. Fusco, Susan Keating Anderson, WALTER & HAVERFIELD LLP, Cleveland, Ohio, for Appellant. Andrew L. Margulis, ROPERS, MAJESKI, KOHN & BENTLEY, New York, New York, for Appellee.

————————————

**OPINION**

————————————

BOYCE F. MARTIN, JR., Circuit Judge. Richard Ganim contends that Columbia Casualty Company breached its insurance agreement in bad faith by refusing to defend him in an arbitration proceeding before the National Association of Securities Dealers. The district court determined that Columbia properly refused to defend because the allegations against Ganim did not state a claim potentially within the scope of the policy's coverage.

1

*See Ganim v. Columbia Cas. Co.*, 2008 WL 2390776 (N.D. Ohio Jun. 9, 2008). We agree and AFFIRM summary judgment in Columbia's favor.

I.

Richard Ganim began as a Legacy Financial Services registered representative in January 2004. Nine months later, Vincent Santalucia sued Ganim in Ohio state court after a business venture between them soured. Santalucia alleged that Ganim breached his fiduciary duty, committed fraud, professional negligence, disability discrimination, and wrongful discharge by inducing him to invest more than $500,000 in the "Carlyle Financial Group."[1] Santalucia further alleged that Ganim advised Santalucia "in all aspects of his financial planning, including stock and mutual funds purchases, IRA investments, retirement planning, etc."

Ganim notified Legacy's insurer, Columbia Casualty Company, of Santalucia's lawsuit. By agreement, Columbia was obligated to defend Legacy's registered representatives for negligence in "rendering or failure to render Professional Services." Columbia agreed to defend Ganim, but reserved the right to later disclaim defense and indemnity coverage. It also told Ganim that no coverage would be available for losses resulting from the Carlyle investments, which were not investments approved by Legacy. Columbia defended Ganim and the case was dismissed without prejudice in 2005.

Santalucia then filed an arbitration claim against Ganim and Legacy before the National Association of Securities Dealers. Santalucia asserted claims for unsuitable investment advice, misrepresentation, negligence, and breach of fiduciary duty. His "Statement of Claim" began: "This arbitration addresses the unsuitable and inappropriate solicitation of a customer's retirement savings by his long-term investment advisor to invest in that investment advisor's *own financial services business* with the resultant loss of the customer's—the Claimant's—entire retirement savings; an amount in excess of $500,000." (emphasis in original). According to Santalucia, Ganim

---

[1] Santalucia apparently knew all along that his investment was not in *The* Carlyle Group—a well-known private equity firm—but, rather, in a similarly-named limited liability company where Ganim served as president and operations officer.

expressed his "longtime personal dream" to own a "'one stop' financial services business" to Santalucia and then convinced him to "pour money" into the newly-founded "Carlyle Entities," depleting Santalucia's personal investments and leaving him in financial ruin. Santalucia sought to recover the loss in the value of his investment accounts as well as the amount that they would have appreciated if they had been "reasonably and prudently invested."

As with the earlier lawsuit, Ganim submitted the arbitration claim to Columbia. This time, however, Columbia responded by denying defense and indemnity coverage under Part B of the policy. Coverage under Part B was limited to "investment advisory services" and the "sale or attempted sale or servicing of securities . . . approved by" Legacy. Part B excluded claims involving "products or services not approved by [Legacy]" or "any security that is not registered with the Security [sic] and Exchange Commission." Columbia explained that because Santalucia's interest in Carlyle was neither a registered security nor a product approved by Legacy, his claim against Ganim did not trigger Columbia's duty to defend. Columbia's denial letter did not discuss whether defense coverage was available under any other part of the policy.

Ganim then sued Columbia in district court alleging that the insurer: (1) breached its contract by refusing to provide Ganim with an arbitration defense; (2) acted in bad faith by withholding a defense without a reasonable justification; (3) breached its "good faith obligation" by refusing to defend Ganim in the arbitration claim after it had represented him in a "substantially similar" civil adjudicatory proceeding in state court; and (4) breached its good faith obligation by providing coverage to Legacy Financial Services under the "Selling Away Coverage" endorsement instead of under an endorsement with a lower retention. The district court granted Columbia's motion for summary judgment on all Ganim's claims. Ganim appeals.

## II.

This Court reviews *de novo* the grant of summary judgment. *Mohnkern v. Prof'l Ins. Co.*, 542 F.3d 157, 160-61 (6th Cir. 2008).

III.

Ganim argues that he presented sufficient evidence to warrant a jury trial on his claim that Columbia breached, in bad faith, its contractual duty to defend him in the arbitration proceeding.  The crux of this argument is that Columbia impermissibly looked beyond the allegations in Santalucia's arbitration claim in deciding whether it was obligated to defend Ganim.  Ganim contends that, based on Santalucia's allegations, the claim could have potentially fallen within the scope of coverage, thus obligating Columbia to provide Ganim's defense.

Under Ohio law, which the parties agree applies, an insurer's promise to defend allegations that are "groundless, false or fraudulent" imposes "the absolute duty to assume the defense of the action where the underlying tort complaint states a claim which is potentially or arguably within the policy coverage." *Sanderson v. Ohio Edison Co.*, 635 N.E.2d 19, 23 (Ohio 1994); *Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 558 (Ohio 1984).  And the inverse is also true; Ohio law "does not require a defense where the complaint contains no allegation that states a claim 'potentially or arguably within the policy coverage.'" *Wedge Prods., Inc. v. Hartford Equity Sales Co.*, 509 N.E.2d 74, 76 (Ohio 1987) (internal citation omitted).

Requiring insurers to defend claims that are "potentially" within a policy's coverage acknowledges that, under notice pleading, a complaint may lack detail necessary to "conclusively establish the duty." *Willoughby Hills*, 459 N.E.2d at 557. Relevant facts and details may come to light "at some later stage in the litigation." *Id.* Thus, an insurer's obligation to defend against claims "potentially" within the scope of coverage prevents an insurer from strictly or narrowly construing a complaint's allegations and refusing to defend. *See id.* at 558.

In this case, under Part B of Columbia's policy, coverage was limited to investments that were approved by Legacy and were SEC registered securities.  The question is whether Santalucia's allegations stated a claim "potentially" or "arguably" within Columbia's policy.  The district court properly concluded that they did not. Columbia was not confronted with bare allegations that some later-discovered fact might

have swept within the scope of coverage. Rather, Santalucia's detailed and specific allegations described how Ganim solicited him to invest in Ganim's "own financial services business [Carlyle]" and that "[r]elying upon Ganim's advice, encouragement and pressure, Santalucia continued to pour money into the Carlyle Entities even after his original assets had been depleted." The arbitration claim mentioned no other investments. And, as the district court observed, Ganim admitted in his motion to dismiss that, "All of the losses for which Santalucia is seeking recovery stem from these supposedly recommended investments that he made in the Carlyle Entities during that time period." There was no potential that a later development could have changed the nature of the investment at issue.

Of course, as Ganim points out, it would be nonsense for Columbia's obligations to evaporate solely because Santalucia did not specify whether Carlyle was a registered security or approved by Legacy. After all, Carlyle's registration with the SEC or approval by Legacy may have been irrelevant to the claims Santalucia brought against Ganim. But Columbia's decision to deny coverage did not turn on a mechanical word search of Santalucia's claim for "approved by Legacy" or "securities." As Ganim concedes, at the time Santalucia filed his arbitration claim both Columbia and Ganim knew that the only investment mentioned in the claim—Carlyle—was neither a registered security nor a Legacy-approved product. Accordingly, it was specifically excluded from coverage under the policy and could not "potentially" fall within it.

Nor are we convinced that Columbia should have defended Ganim because Santalucia stated that his claim was based on Ganim's failure to "make only recommendations which are suitable for a customer based on his/her age, experience, risk tolerance and financial objectives." This statement was not tied to a factual basis; it described a cause of action appearing under the heading "Respondents' Liability to Claimant: Unsuitable Investment Advice, Misrepresentation, Negligence and Breach of Fiduciary Duty." Assuming that Ganim's actions amounted to a breach of a fiduciary duty does not change the conclusion that the claim was not covered because it involved an investment excluded by the policy. Columbia therefore properly refused to defend

Ganim based on the allegations in Santalucia's claim because they were not "potentially or arguably" within the scope of its coverage.  *See Wedge Prods., Inc.*, 509 N.E.2d at 76.

Ganim also argues that Columbia denied his claim in bad faith.  An insurer acts in bad faith when its denial of a claim "is not predicated upon circumstances that furnish reasonable justification therefor."  *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (Ohio 1994) (internal citation omitted).  Ganim argues that there was no "reasonable justification" for Columbia's decision.  But, as we discuss above, Columbia and Ganim knew that Carlyle did not meet the criteria for coverage under Part B of the policy.  As the district court properly observed, "[Ganim's] contention that [Columbia's] knowledge in this respect shows that it went beyond the pleadings puts an unreasonable spin on what is required in reviewing a claim."  *Ganim*, 2008 WL 2390776 at *9.

Finally, Ganim's objections to the length of Columbia's February 2006 denial letter and its failure to analyze coverage under Part A do not support a bad faith claim. The length of the letter is immaterial.  And Ganim does not explain how he would have benefitted from a rejection under Part A, which covered services as a notary, the sale and administration of employee benefit plans, insurance, and annuities—none of which Santalucia alleged in his claim.

## IV.

In sum, Columbia had a reasonable justification to deny Ganim a defense because Santalucia's claim did not allege any facts that could potentially bring it within the scope of coverage.  The district court properly entered summary judgment in Columbia Casualty Company's favor.  We AFFIRM.