**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 17, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DISH NETWORK CORPORATION;
DISH NETWORK, LLC,

      Plaintiffs-Appellants,

v.

ARCH SPECIALTY INSURANCE
COMPANY; ARROWOOD
INDEMNITY COMPANY;
TRAVELERS INDEMNITY COMPANY
OF ILLINOIS; XL INSURANCE
AMERICA, INC.; NATIONAL UNION
FIRE INSURANCE COMPANY OF
PITTSBURGH, PA,

      Defendants-Appellees.

No. 10-1445

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:09-CV-00447-JLK-MEH)**

---

Lee M. Epstein of Fried & Epstein LLP, Philadelphia, Pennsylvania (Todd Mackintosh of Mackintosh Law Office, LLC, Denver, Colorado, with him on the briefs), for Plaintiffs-Appellants.

Daniel I. Graham, Jr. of Bates Carey Nicolaides LLP, Chicago, Illinois (Richard H. Nicolaides, Jr., Barbara I. Michaelides, Agelo L. Reppas of Bates, Carey, Nicolaides LLP; Thomas N. Alfrey and Robert J. Zavaglia, Jr. of Treece Alfrey Musat & Bosworth, PC, Denver, Colorado; Roger K. Heidenreich and Deborah C. Druley of SNR Denton US LLP, St. Louis, Missouri; Kevin F. Amatuzio and Krista M. Maher of Montgomery Kolodny Amatuzio & Dusbabek, LLP, Denver, Colorado; and George S. McCall of Sedgwick LLP, Dallas, Texas, with him on the brief), for Defendants-Appellees.

Before **BRISCOE,** Chief Judge, **BALDOCK,** and **HOLMES**, Circuit Judges.

**BRISCOE**, Chief Judge.

Plaintiffs DISH Network Corporation and DISH Network LLC (collectively, Dish) filed a diversity action in the District of Colorado, seeking a judgment declaring that Dish's insurers had a duty under Colorado law to defend Dish in a patent infringement suit.[1]  The district court held that the underlying complaint did not allege an "advertising injury" under the policies issued to Dish by the five defendant insurers, Arrowood Indemnity Company (Arrowood), Travelers Indemnity Company (Travelers), XL Insurance America (XL), Arch Specialty Insurance Company (Arch), and National Union Fire Insurance Company (National Union), or their predecessors (collectively, Insurers).  The court granted Insurers' motion for summary judgment, and Dish appeals.  Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand.

---

[1]  DISH Network Corporation is a citizen of Nevada and Colorado and DISH Network LLC is a citizen of Colorado.  The defendant Insurers are citizens of New York and Nebraska (Arch), Delaware and North Carolina (Arrowood), New York and Pennsylvania (National Union), Connecticut (Travelers), and Connecticut and Delaware (XL).  See Dish Network Corp. v. Arch Specialty Ins. Co., 734 F.Supp. 2d 1173, 1176 n.3 (D. Colo. 2010).  The district court found the amount in controversy to exceed $75,000.  Id. at 1176.

*A. The Underlying Complaint and Patents-in-Suit*

Dish[2] sells satellite television programming.  Aplt. App. at 2156.  The present

insurance coverage dispute arises from a patent infringement suit brought against Dish by

Ronald A. Katz Technology Licensing, L.P. (RAKTL).  Ronald A. Katz Tech. Licensing,

LP v. EchoStar Commc'ns Corp. and EchoStar Satellite LCC, Case No. C-07-03151

WDB (N.D. Cal.).

In its amended complaint, RAKTL alleged that Dish had infringed one or more

claims in each of twenty-three patents.  Aplt. App. at 167 ¶ 45.  RAKTL asserted that

Dish did so by "making, using, offering to sell, and/or selling . . . automated telephone

systems, including without limitation the DISH Network customer service telephone

system, that allow [Dish's] customers to perform pay-per-view ordering and customer

service functions over the telephone."  Id.  Although the record reveals little more about

how Dish actually used the technologies at issue, the complaint does provide some

general background regarding RAKTL's patents:

> Among [the inventor's] most prominent and well-known innovations are those
> in the field of interactive call processing. [His] inventions in that field are
> directed to the integration of telephonic systems with computer databases and
> live operator call centers to provide interactive call processing services.

---

[2] Dish was formerly known as EchoStar Communications Corporation and
EchoStar Satellite LLC.  Although the district court stated that "[d]efendant Insurers
contest whether EchoStar Satellite LLC is covered under the policies," Dish, 734 F.Supp.
2d at 1175, Insurers concede the issue "[f]or purposes of summary judgment and this
appeal only," Insurers' Response Brief at 5.

Id. at 162 ¶ 10. RAKTL alleged that its patents have "multiple fields of use, including but not limited to financial services call processing, automated securities transactions, automated credit card authorization services, automated wireless telecommunication services and support, automated health care services, and product and service support." Id. at 163 ¶ 17.

Each of the patents-in-suit contains detailed claims outlining numerous possible applications for the technology. Id. at 2177-2744. Insurers concede that at least six of the claims Dish may have infringed explicitly mention advertising or product promotion. See Insurers' Response Brief (Ins. Resp. Br.) at 60 (citing Aplt. App. at 2269, 2271, 2681 (claims describing "[a] process . . . wherein [the] operating format is an automated promotional format;" "an automated promotional format for promoting . . . products;" and "[a] telephone interface system . . . wherein said select interactive operating format involves advertising of a product for sale")).

### B. The Relevant Insurance Policies

Between 2001 and 2004, Dish purchased the primary and excess commercial general liability policies at issue here from the five defendant Insurers. Ins. Resp. Br. at 5-7. Primary insurance is provided by Arrowood and Travelers, while XL, Arch, and National Union are responsible for excess coverage if the primary policies are exhausted. Id.

All of the policies promise to defend and indemnify Dish against claims alleging

"advertising injury," among other things.  Most of the policies define "advertising injury" in terms of four categories of offenses:

> "Advertising Injury" means injury arising out of one or more of the following offenses:
> 1.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> 2.  Oral or written publication of material that violates a person's right to privacy;
> 3.  Misappropriation of advertising ideas or style of doing business; or
> 4.  Infringement of copyright, title or slogan.

Aplt. App. at 208, 431, 479, 536, 964.  The National Union policy, by contrast, limits coverage to "injury arising *solely* out of your advertising activities as a result of" one or more of the four types of offenses.  Id. at 208 (emphasis added).  The Arch policy is the only one to provide a different definition of "advertising injury," referring, in relevant part, to "[t]he use of another's advertising idea in your 'advertisement.'" Id. at 1013.  Arch's policy also contains a clause excluding from coverage "any claim . . . [a]rising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights."  Id. at 1004.  This exclusion, however, "does not apply to infringement, in [the insured's] 'advertisement,' of copyright, trade dress or slogan."  Id.

### C.  The Present Action

On receiving RAKTL's complaint, Dish requested a defense from Insurers, who denied coverage.  Dish Network Corp. v. Arch Specialty Ins. Co., 734 F.Supp. 2d 1173, 1176 (D. Colo. 2010).  Dish then brought this suit, seeking a judgment declaring that

5

Insurers had a duty to defend and indemnify it in the underlying action. Aplt. App. at 29-34. Dish also sued for damages for breach of contract and Insurers' duty of good faith and fair dealing. Id. Insurers moved for summary judgment, which the district court granted. See Dish, 734 F.Supp. 2d at 1185-86.

Applying Colorado law, the district court concluded that a claim for patent infringement, such as the one at issue here, could "properly give rise to coverage, or even the specter of coverage, such that an insurer will have a duty to defend." Id. at 1186. The duty would arise, the court stated, where the insured established three elements: first, that it was engaged in "advertising" during the relevant period; second, that the underlying complaint alleged a predicate offense under the policy language; and third, that a causal connection existed between the advertising and the alleged injury suffered by the patent holder. Id. at 1180.

"For purposes of th[e] summary judgment motion," the court ruled that RAKTL's reference to "customer service functions" in its complaint was sufficient to allege that Dish engaged in "advertising." Id. at 1182. The court rejected, however, Dish's argument that its use of a patented interactive telephone system to advertise could constitute "misappropriation of advertising ideas or style of doing business," the sole predicate offense on which Dish relied. Id. at 1184-85. The court explained that "[t]he [RAKTL] complaint focuses on [Dish]'s use of these patented technologies as a means of conveying content to and tailoring its interactions with its customers." Id. at 1184.

[The complaint] does not allege that the patented technologies are themselves

6

incorporated as an element of [Dish]'s communications and interactions with its customers. The complained of conduct does not, therefore, constitute "misappropriation of an advertising idea" within the meaning of the contested insurance policies.

Id.

Accordingly, the court granted summary judgment for Insurers without addressing the third element of its test—causation—or the additional arguments certain insurers had raised under their individual policies. Id. at 1185 & n.20. The court also did not reach the duty to indemnify or Dish's other claims. Id. at 1186. Because we conclude that the complaint potentially alleges advertising injury arising from the misappropriation of advertising ideas, we reverse and remand for further proceedings consistent with this opinion.

## II.

In this appeal, we are asked to apply Colorado law in deciding several issues without clear guidance from the courts of that state.[3] First, Insurers dispute whether a claim for patent infringement can ever constitute "advertising injury" within the relevant policy language. We conclude that it can. Accordingly, we reach the second issue: whether the specific allegations in this case bring the underlying suit within the policy language. This question requires us to decide, first, whether the underlying complaint can be read to allege "misappropriation of advertising ideas or style of doing business," and

---

[3] Neither party disputes the district court's determination that Colorado law applies in this diversity action. Dish, 734 F.Supp. 2d at 1178-79; Ins. Resp. Br. at 21.

7

second, whether advertising activities are alleged which caused the injury of which the underlying plaintiff complains.[4] We agree with Dish that both "misappropriation of advertising ideas" and the requisite causal connection potentially are alleged.

## *A. Standard of Review*

The district court granted Insurers' motions for summary judgment pursuant to Fed. R. Civ. P. 56(c). We review de novo this decision, using the same summary judgment standard the district court applied. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). "We examine the factual record and reasonable inferences therefrom in the light most favorable to [Dish,] the nonmoving party." Novell, Inc. v. Fed. Ins. Co., 141 F.3d 983, 985 (10th Cir. 1998). If

---

[4] The district court and the parties have framed the analysis in three parts, asking (1) whether advertising took place; (2) whether the complaint alleged misappropriation of an advertising idea or style of doing business; and (3) whether such misappropriation caused the injury of which the underlying plaintiff complains. As the district court noted, Dish, 734 F.Supp. 2d at 1180 n.13, in Novell, Inc. v. Federal Insurance Co., this court applied the following two-part test: "[W]e first examine whether [the underlying] complaint alleged a predicate offense, i.e., one of the offenses specifically listed in the definition of 'advertising injury.' We then examine whether there was any causal connection between [the patent holder's] alleged injuries and plaintiff's advertising activities." 151 F.3d 983, 986 (10th Cir. 1998)

"While we substantively applied Utah law in answering these questions [in Novell], there is no reason why we should not utilize the same two-part structure in answering this question under [Colorado] law." IDG, Inc. v. Cont'l Cas. Co., 275 F.3d 916, 921 (10th Cir. 2001). We note, however, that our test does not differ substantively from the district court's because the second prong of the Novell analysis necessarily requires that we determine whether the plaintiff allegedly engaged in advertising activities. Cf. Amazon.com Int'l, Inc. v. Am. Dynasty Surplus Lines Ins. Co., 85 P.3d 974, 976-77 (Wash. Ct. App. 2004) (framing the analysis as a two-part test but then discussing "advertising injury," "course of advertising," and "causal connection between advertising and injury" under three separate headings).

no genuine issue of material fact exists, we determine whether the district court correctly applied the substantive law. Id.

### B. The Duty to Defend Under Colorado Law

In determining whether there is a duty to defend, Colorado courts adhere to a "four corners rule" or "complaint rule," under which the courts compare the allegations of the underlying complaint with the terms of the applicable policy. "In the duty to defend context, the 'complaint rule' operates to cast a broad net, such that when the underlying complaint alleges any facts or claims that might fall within the ambit of the policy, the insurer must tender a defense." Cyprus Amax Minerals Co. v. Lexington Ins. Co., 74 P.3d 294, 301 (Colo. 2003). Insurers have "a heavy burden to overcome in avoiding the duty to defend, such that the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." Id. (internal quotation marks omitted). This liberal approach recognizes the reality that "notice pleading does not contemplate detail and specificity," id., and a complaint may initially "lack detail necessary to conclusively establish the duty," Ganim v. Columbia Cas. Co., 574 F.3d 305, 307 (6th Cir. 2009) (internal quotation marks omitted).

The patents-in-suit, which combined occupy hundreds of pages, were referenced but not reproduced in RAKTL's amended complaint. See Aplt. App. at 163-67 (complaint); id. at 2177-2744 (patents-in-suit). Both the parties and the district court, however, discussed the substance of at least some of the claims that RAKTL potentially alleges were violated. Dish, 734 F.Supp. 2d at 1176 ("Dish asserts claims in some of the

9

patents are relevant . . . . For example, Claim 219 of patent-in-suit # 5828734 states that the patent claims '[a] telephone interface system . . . wherein said selective operating format involves advertising a product for sale.'"); Ins. Resp. Br. at 60; Dish Opening Br. at 6-9. Although Insurers suggest that such material is "extrinsic evidence" inappropriate for consideration under the complaint rule, Ins. Resp. Br. at 61, the complaint explicitly alleges infringement of "one or more claims of each of the patents identified," Aplt. App. at 167. The content of these patent claims is not disputed, and is not itself the subject of the underlying suit. See Pompa v. Am. Family Mut. Ins. Co., 520 F.3d 1139, 1147-48 (10th Cir. 2008) (predicting that Colorado courts would recognize an exception to the four corners rule for an "indisputable fact that is not an element of either the cause of action or a defense in the underlying litigation"). Accordingly, a Colorado court might well consider the substance of these claims in determining whether a duty to defend exists.

We need not decide the issue, however, because Insurers concede that the RAKTL technology has potential advertising uses. See Ins. Resp. Br. at 39 ("While the patented technology could theoretically be used for advertising purposes, this changes nothing."). The real substance of the parties' dispute focuses not on specific patent claims, but on whether, under Colorado law, RAKTL's allegation that Dish infringed its patents by "allow[ing its] customers to perform pay-per-view ordering and customer service functions" can be read to allege "advertising injury."

## C. Interpretation of Insurance Policies

In construing the terms of an insurance policy, Colorado law mandates that the court apply ordinary principles of contract interpretation. Cyprus, 74 P.3d at 299. Policy terms "are to be interpreted as understood by an ordinary person, not by one engaged in the insurance business." Allstate Ins. Co. v. Juniel, 931 P.2d 511, 516 (Colo. App. 1996). Further, the court should, if possible, give effect to the reasonable expectations of the insured. Regional Bank of Colorado, N.A. v. St. Paul Fire & Marine Ins. Co., 35 F.3d 494, 497 (10th Cir. 1994) (applying Colorado law); Cotter Corp. v. Am. Empire Surplus Lines Ins. Co., 90 P.3d 814, 828 (Colo. 2004) (stating that the four corners rule "protects an insured's reasonable expectation of a defense"). Any ambiguity in a policy must be construed against the insurer and in favor of coverage. Chacon v. Am. Family Mut. Ins. Co., 788 P.2d 748, 750 (Colo. 1990). Ambiguity exists where a policy term admits of more than one reasonable interpretation. Hoang v. Assurance Co. of Am., 149 P.3d 798, 801 (Colo. 2007).

## D. Patent Infringement as "Advertising Injury"

The threshold issue in this case is whether patent infringement can ever fall within the applicable commercial general liability policies' "advertising injury" coverage. The parties have focused their arguments exclusively on the offense within the definition of "advertising injury" consisting of "misappropriation of advertising ideas or style of doing business." Dish Op. Br. at 30; Ins. Resp. Br. at 36. The district court concluded that, under certain circumstances, Colorado courts would hold that patent infringement may

11

indeed fall within the policy language. <u>Dish</u>, 734 F.Supp. 2d at 1183. We agree.

The Colorado courts have not addressed this issue, and the parties disagree as to what the weight of authority from other jurisdictions teaches. Dish states that "a clear majority view has emerged. . . . [C]ourts routinely distinguish between claims based on the manufacture and sale of an infringing product—in which case the claim is not covered even if the product is used in advertising—and a claim based on the unauthorized use of a patented advertising idea or method—in which case the claim is covered." Dish Op. Br. at 20. Insurers, on the other hand, contend that "courts hold that the phrase 'misappropriation of advertising ideas or style of doing business' is unambiguous: It does not encompass patent infringement claims." Ins. Resp. Br. at 49.

Numerous cases do, indeed, categorically rule out "advertising injury" coverage for patent infringement. <u>See, e.g.</u>, <u>Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc.</u>, 97 F.Supp. 2d 913, 930 n.10 (S.D. Ind. 2000) (stating that patent infringement cannot be misappropriation of style of doing business); <u>Auto Sox USA Inc. v. Zurich N. Am.</u>, 88 P.3d 1008, 1011 n.1 (Wash. Ct. App. 2004) (noting that "the majority of cases hold that patent infringement is not covered by the misappropriation of an advertising idea in an insurance policy," but acknowledging the contrary holding in <u>Amazon</u>, 85 P.3d at 976-77). We note, though, that in spite of their broad language, many of the cases Insurers cite focus on the policy terms "misappropriation of style of doing business" or "infringement of title." <u>See, e.g.</u>, <u>St. Paul Fire & Marine Ins. Co. v. Advanced Interv'l Sys., Inc.</u>, 824 F.Supp. 583, 586 (E.D. Va. 1993), <u>aff'd</u>, 21 F.3d 424 (4th Cir. 1994); <u>U.S.</u>

12

Test, Inc. v. NDE Envtl. Corp., 196 F.3d 1376, 1381 (Fed. Cir. 1999). Our decision

today, by contrast, rests on the "misappropriation of advertising ideas" language in Dish's

policies.[5]

More importantly, however, many of the cases Insurers rely on are distinguishable

from the facts before us. The bulk of the published case law addressing patent

infringement as advertising injury deals with products the insured happened to advertise,

rather than a means of advertising that the insured used to market its own products. In

Heritage, for example, the court addressed allegations of infringement arising from the

manufacture and sale of a patented piping product—"a distinctly different claim from

alleging that [the policy holder] took an idea about how to solicit business or advertise the

_____

[5] We also recognize that patent law has changed since some of the cases categorically ruling out patent infringement coverage were decided. An amendment to the Patent Act that became effective in 1996 added "offers to sell" as potentially patent-infringing conduct, in addition to the making, using, or selling of patented inventions. Dish, 734 F.Supp. 2d at 1183 n.17; see also Homedics, Inc. v. Valley Forge Ins. Co., 315 F.3d 1135, 1139 (9th Cir. 2003) (discussing the change in the law).

We reject, however, Dish's argument that the 1996 amendment is relevant in this case. Dish Rep. Br. at 22-23. The change in the law merely allows for an offer to sell a patented product to constitute infringement. It says nothing new about whether the *use* of an infringing product to promote products and services can be advertising injury. Amazon, 85 P.3d at 977 n.20 (rejecting the relevance of this change in the law "because Intouch's complaint alleges an infringement based on Amazon's *use* of its patented product, [and therefore the] amendments do not affect the outcome here"); see also Tradesoft Techs, Inc. v. Franklin Mut. Ins. Co., Inc., 746 A.2d 1078, 1086 (N.J. Super. Ct. App. Div. 2000) (specifically rejecting the argument that the change in the patent laws changed the scope of "advertising injury" coverage). This case is not about "offers to sell" a patented product, although RAKTL's complaint does recite that language from the patent statute. Aplt. App. at 167. The factual allegations do not suggest that Dish infringed RAKTL's patents by selling telephone interface systems, but rather that it used those systems to sell its own satellite television products and services.

13

underground piping product." 97 F.Supp. 2d at 927. Similarly, in Advanced Interventional, the patentee alleged that the insured had infringed its patents by manufacturing a certain device and had induced patent infringement by causing others to use it. 824 F.Supp. at 584. Finally, in Auto Sox, the technology at issue was "an apparatus and related method for displaying [a] removable advertising sign on a vehicle." 88 P.3d at 1011. Although this idea at least related to advertising, the court explained that "Auto Sox did not take [the inventor's] ideas about how to solicit customers with his patented design for a rooftop sign. Auto Sox took his idea for the manner in which a rooftop sign is attached to a vehicle"—and manufactured and sold a product using that idea. Id. These cases offer only limited guidance in the less common factual setting before us here.

In the present case, by contrast, Dish allegedly committed patent infringement by using RAKTL's technology to sell Dish's own non-infringing satellite television products and services. Several courts considering similar facts have affirmatively held that where an advertising technique itself is patented, its infringement may constitute advertising injury. See Hyundai Motor Am. v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa., 600 F.3d 1092, 1102 (9th Cir. 2010); Amazon.com Int'l, Inc. v. Am. Dynasty Surplus Lines Ins. Co., 85 P.3d 974, 977 (Wash. Ct. App. 2004); but see Discover Fin. Serv., LLC v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa., 527 F.Supp. 2d 806 (N.D. Ill. 2007) (concluding that a patent infringement suit by RAKTL did not allege advertising injury). In Hyundai and Amazon, the underlying complaints alleged patent infringement through the use of

14

certain technologies on the policy holders' websites. Hyundai, 600 F.3d at 1095; Amazon, 85 P.3d at 976. The Ninth Circuit, applying California law, and the Washington Court of Appeals concluded that these complaints potentially alleged misappropriation of advertising ideas. Hyundai, 600 F.3d at 1101-02; Amazon, 85 P.3d at 977.

The Hyundai court noted the general rule that "to constitute an advertising injury, the third-party claim must concern the 'elements *of the advertisement itself*—in its text[,] form, logo or pictures—rather than in the product being advertised.'" 600 F.3d at 1101 (emphasis in original) (quoting Iolab Corp. v. Seaboard Sur. Co., 15 F.3d 1500, 1506 (9th Cir. 1994)). This dichotomy is suggested even in many of the cases Insurers cite. See, e.g., Auto Sox, 88 P.3d at 1011 ("Auto Sox['s] alleged infringement occurred not in advertising but in the manufacture and sale of an infringing product."); Heritage, 97 F.Supp. 2d at 927. In this case, the interactive telephone system Dish employs to communicate with its customers "plainly is not 'the product being advertised,' i.e.," satellite television programming, Hyundai, 600 F.3d at 1101; rather, it is just as much the "form" of Dish's advertisements as were the internet technologies in Hyundai and Amazon.

Insurers correctly point out that Dish's policies do not expressly extend coverage for patent infringement, though they specifically list certain other intellectual property offenses. Ins. Resp. Br. at 8 (citing Aplt. App. at 208, 431, 479, 536, 964 (covering "[i]nfringement of copyright, title or slogan")). Other courts have rejected the duty to defend patent suits on this basis. See, e.g., Owens-Brockway Glass Container, Inc. v.

15

Int'l Ins. Co., 884 F.Supp. 363, 367 (E.D. Cal. 1995); Gencor Indus. Inc. v. Wausau

Underwriters Ins. Co., 857 F.Supp. 1560, 1564 (M.D. Fla. 1994)).  Insurers argue that "it

is 'nonsense' to suppose that an insurer intends to cover patent infringement claims

through silence when the policy expressly includes infringement of other types of

intellectual property—copyright, title or slogan—in the 'advertising injury' definition."

Ins. Resp. Br. at 46 (quoting Advanced Interventional, 824 F.Supp. at 586 (discussing

"style of doing business" language)).

In response, Dish argues that four of its policies are at least ambiguous because

only the fifth includes an intellectual property exclusion which specifically *withdraws*

coverage for patent infringement.  Dish Op. Br. at 51-52; Reply Br. at 24.  Citing Union

Insurance Co. v. Land and Sky, Inc., 529 N.W.2d 773 (Neb. 1995), Dish argues that the

absence of such exclusionary language in the other policies means that they may cover

patent actions.  Dish Op. Br. at 51-52; Reply Br. at 24.  Land and Sky, however, is of

limited utility to Dish.  In that case, the Nebraska Supreme Court held that the term

"piracy" was ambiguous in the context of advertising injury coverage because the insurer

had issued both a primary and an excess policy to the plaintiff, and only the excess policy

contained a clause excluding patent coverage.  Land and Sky, 529 N.W.2d at 777.  This,

the court concluded, suggested the insurer's intent to cover patent infringement in its

other policy.  Id.  But the fact that one of Dish's insurers—Arch—drafted a policy with a

patent infringement exclusion says nothing about what coverage the other four insurers

provided.  Aplt. App. at 1004.  It says little more that another insurer, National Union,

16

subsequently inserted an exclusion in policies not at issue here.  <u>See</u> Aplt. App. at 2165-66, 2168-69, 2171-72, 2174-75.  The present case must be distinguished from <u>Land and Sky</u> for the simple reason that the purported inconsistency does not exist within policies that Dish received contemporaneously from any single insurer.

Nonetheless, we do conclude that "misappropriation of advertising ideas," in the context of this case, is ambiguous and must be construed in favor of coverage.  As Insurers note, "policy terms may be ambiguous as applied to one set of facts, but unambiguous as applied to another."  Ins. Resp. Br. at 24 (citing <u>Allstate</u>, 931 P.2d at 514).  The scope of "advertising injury" coverage may be manifestly clear in most cases, in which a patented product is advertised and sold.  <u>See, e.g.</u>, <u>Auto Sox</u>, 88 P.3d at 1011 (holding the term "misappropriation of an advertising idea" to be unambiguous).  In a setting where the advertising idea that is misappropriated happens to also be a patented technology, however, the scope of coverage is less certain.

Numerous cases suggest that while the advertisement of an infringing product will not qualify, the infringement of a patented advertising idea will.  <u>See, e.g.</u>, <u>Iolab</u>, 15 F.3d at 1506; <u>Heritage</u>, 97 F.Supp. 2d at 927.  At the same time, many cases unequivocally reject patent coverage.  <u>See, e.g.</u>, <u>U.S. Fid. & Guar. Co. v. Frosty Bites, Inc.</u>, 232 F.Supp. 2d 101, 103 (S.D.N.Y. 2002).  Faced with "a large amount of conflicting authority," <u>Hecla Mining Co. v. New Hampshire Ins. Co.</u>, 811 P.2d 1083, 1092 n.13 (Colo. 1991), we do not believe that an ordinary person would reasonably expect the words "misappropriation of advertising ideas" to exclude coverage for a suit alleging the

17

misappropriation of a patented advertising idea, even if the word "patent" appears nowhere in the policy. State Farm Mut. Auto. Ins. Co. v. Nissen, 851 P.2d 165, 167-68 (Colo. 1993) ("The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."). To rule otherwise would risk "ignoring the real contours of intellectual property litigation, which often proceeds under a bewildering variety of different labels covering the same material facts." Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 747 (3d Cir. 1999); see also Gerrity Co., Inc. v. CIGNA Prop. & Cas. Ins. Co., 860 P.2d 606, 607 (Colo. App. 1993) ("It is . . . the factual allegations in the complaint, and not the legal claims, that determine an insurer's duty.").

Moreover, to categorically exclude patent coverage merely because a policy enumerates other intellectual property violations would conflict with the principle, well established in Colorado, that exclusions are strictly construed against the insurer and "must be written in clear and specific language." Bohrer v. Church Mut. Ins. Co., 965 P.2d 1258, 1262 (Colo. 1998). Finally, as Dish notes, the intellectual property exclusion in Arch's policy demonstrates that the other insurers could have used more precise language if the parties had desired to exclude coverage for patent suits. Dish Op. Br. at 18. While imperfect wording "does not necessarily make [a policy term] ambiguous," In re Katrina Canal Breaches Litig., 495 F.3d 191, 209-10 (5th Cir. 2007), the failure of National Union, XL, Travelers, and Arrowood to make explicit the exclusion they now

18

seek does "undermine[] [their] claim that the contested language is clear and unambiguous," Entron, Inc. v. Affiliated FM Ins. Co., 749 F.2d 127, 130 (2d Cir. 1984).

In short, the scope of advertising injury coverage in this case is at least ambiguous with regard to patent infringement allegations. Although the cases are rare in which an allegedly infringed patent is itself an advertising idea rather than merely an advertised product, we find persuasive the Hyundai and Amazon courts' approach to this unusual situation. Construing ambiguous policy language in favor of coverage, as we must under Colorado law, we hold that "[d]epending on 'the context of the facts and circumstances of th[e] case,' patent infringement can qualify as an advertising injury if the patent 'involve[s] any process or invention which could reasonably be considered an 'advertising idea.'" Hyundai, 600 F.3d at 1100 (quoting Mez Indus., Inc. v. Pac. Nat'l Ins. Co., 90 Cal. Rptr. 2d 721, 733 (Cal. Ct. App. 1999)). Because we conclude that a suit for patent infringement can, under narrow circumstances, allege "misappropriation of advertising ideas," we need not consider evidence of the evolutionary history of the relevant policy language that Dish proffered in the district court to demonstrate ambiguity. See Dish Op. Br. at 44-48 (describing materials promulgated by the Insurance Services Office).[6]

### E. Misappropriation of Advertising Ideas or Style of Doing Business

We turn now to the first prong of the Novell analysis: whether the complaint

---

[6] Our holding also renders moot Dish's argument that the district court abused its discretion in limiting the scope of discovery with regard to this issue.

19

potentially alleged a predicate offense, *viz.*, "misappropriation of advertising ideas or style of doing business." Novell, 141 F.3d at 986. Dish contends that RAKTL alleges that it took both advertising ideas and a style of doing business. We are not convinced that the allegations here can be read to allege misappropriation of a style of doing business. For the reasons set forth below, however, we do think that the allegations are broad enough, under Colorado law, to potentially allege misappropriation of advertising ideas.

### *1. Advertising Ideas*

The district court determined that Dish had engaged in advertising activities, but held that it had not misappropriated "advertising ideas." Dish, 734 F.Supp. 2d at 1182, 1184. In so holding, the court adopted an unduly narrow interpretation of the relevant policy language.

Critical to our analysis is the meaning of "advertising," a term which the insurance policies at issue generally fail to define.[7] Colorado law, moreover, provides little guidance as to the proper interpretation of "advertising ideas or style of doing business;" only one case seems to define, at least partially, the latter phrase. In Tynan's Nissan, Inc. v. American Hardware Mutual Insurance Co., the Colorado Court of Appeals noted that a

---

[7] The exception is the Arch policy, which defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products, or services for the purposes of attracting customers or supporters." Aplt. App. at 1011. However, the parties have not argued that Arch merits separate consideration on this basis.

generic style of doing business must be related to advertising activities to constitute a covered "style of doing business." 917 P.2d 321, 325 (Colo. App. 1995). As the district court observed, this is no more than an acknowledgment of the causation requirement which forms the second part of the "advertising injury" test. Dish, 734 F.Supp. 2d at 1183.

Given the lack of Colorado authority on the topic, we look to other jurisdictions. In re Marriage of Ciesluk, 113 P.3d 135, 142 (Colo. 2005). Following the same approach, the district court determined that "[t]he generally accepted definition of advertising is the dissemination of information to promote a product." Dish, 734 F.Supp. 2d at 1181. Dish proposes several broader definitions. In Hyman v. Nationwide Mutual Fire Insurance Co., "advertising" was defined as the "action of calling something to the attention of the public." 304 F.3d 1179, 1188 (11th Cir. 2002). The court in Amazon understood it to encompass "any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business." 85 P.3d at 977 (internal quotation marks omitted). Insurers, on the other hand, propose that "advertising" means only "widespread distribution of promotional materials to the public at large." Ins. Resp. Br. at 29 (citing Hayward v. Centennial Ins. Co., 430 F.3d 989, 991 (9th Cir. 2005)). They contrast this definition with that of "solicitation," a one-on-one promotional activity which does not constitute "advertising." Ins. Resp. Br. at 29.

We need not definitively choose among these definitions because under any of them, the underlying complaint in this case can be read to potentially allege the

21

misappropriation of advertising ideas.[8]  The complaint asserts that Dish infringed one or more claims in each of twenty-three patents held by RAKTL.  Insurers concede that some of these patents explicitly claim the technology's capacity for advertising.  Ins. Resp. Br. at 60 (citing Aplt. App. at 2269, 2271, 2681).  Further, Insurers concede that "the patented technology could theoretically be used for advertising purposes."  Id. at 39.

The complaint, from the four corners of which the duty to defend must be determined, potentially alleges advertising simply because it provides no insight into what "pay-per-view ordering and customer service functions" entail.  We cannot rule out the possibility that these activities involve not only the passive acceptance of sales requests, but also the active promotion of products through the dissemination of information, such as pricing and programming options.  The functions patented by RAKTL conceivably allow Dish not only to sell the product a consumer calls up to purchase, but also to make

---

[8]  While Colorado cases have not defined "advertising" in this setting, broad definitions are discussed in other contexts.  See, e.g., Watson v. Pub. Serv. Co. of Colo., 207 P.3d 860, 868 (Colo. App. 2008) (distinguishing between an offer and an advertisement, and citing the following dictionary definitions:  "[t]he action of drawing the public's attention to something to promote its sale;" "calling attention to or making known"); Estes Park Chamber of Commerce v. Town of Estes Park, 199 P.3d 11, 13 (Colo. App. 2007) (strictly construing the term "advertising" as narrower than "marketing," and defining it as "the nonpersonal communication of information to the public to promote a product, service, or idea using a form of media"); Colo. State Bd. of Med. Exam'rs v. Davis 893 P.2d 1365, 1369 (Colo. App. 1995) (citing dictionary definition of "[a]ny oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business," in the context of "false advertising" by a doctor).

up-sell offers[9] tailored to the specific caller. When the technology's patented advertising capabilities are considered in conjunction with the vague factual assertions made in the complaint, the allegations are sufficiently broad to encompass "distribution of promotional materials," "dissemination of information to promote a product," or "calling something to the attention of the public."

Read liberally, the complaint generally alleges that Dish misappropriated a product: it allegedly used, made, sold, or offered for sale a telephone system patented by RAKTL. More specifically, however, the complaint may be read to allege actions that misappropriated patented advertising ideas, insofar as the product at issue was designed expressly for product promotion and dissemination of advertising information. Cf. Amazon, 85 P.3d at 977 (concluding that because "Amazon's website exists for the purpose of promoting products for sale to the public. . . . [the underlying] complaint thus *implicitly* alleged that Amazon used its product in the course of advertising" (emphasis added)). Thus, this case differs from the typical scenario in which the policy holder merely advertised a product it had already misappropriated. See, e.g., Simply Fresh Fruit, Inc. v. Cont'l Ins. Co., 94 F.3d 1219, 1223 (9th Cir. 1996) (characterizing the plaintiffs' alleged infringement as the misappropriation of an automated process for slicing fruit, which use they then advertised to customers on factory tours). Instead, the complaint

---

[9] An "up-sell" is a "sales pitch for additional products or services" made to a customer calling to place an order. See West Corp. v. Super. Ct., 11 Cal. Rptr. 3d 145, 150 (Cal. Ct. App. 2004).

23

here alleges misappropriation of a product specifically designed, in part, for advertising purposes. Further, it potentially alleges that the technology was used for such purposes.

Insurers insist that "[a]s RAKTL does not contend that Dish *actually* used the technology for advertising purposes, Dish's theoretical ability to do so is irrelevant." Ins. Resp. Br. at 40 (emphasis in original). This, however, misapprehends the applicable legal standard. The question, under Colorado law, is not whether the complaint unequivocally spells out the specific advertising activities Dish engaged in, but rather whether "the alleged facts even potentially fall within the scope of coverage." Constitution Assocs. v. New Hampshire Ins. Co., 930 P.2d 556, 563 (Colo. 1996). It is not clear from the complaint whether or not Dish is alleged to have infringed advertising-related claims in RAKTL's patents by conveying promotional information. Nonetheless, Insurers have not met their "heavy burden" of proving that "the underlying claim [cannot] fall within policy coverage." Cyprus, 74 P.3d at 301.

We are particularly mindful, in this regard, of the Colorado Supreme Court's admonition that where "there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." Compass Ins. Co. v. City of Littleton, 984 P.2d 606, 613-14 (Colo. 1999). Indeed, we recognize that "in some instances, insurers will be found to have a duty to defend even though ultimately it may be determined that they have no duty to indemnify." Id. at 613. That this could conceivably be such an instance has no bearing on our analysis here; in the appeal presented, we do not address the duty to indemnify, which the parties agreed to

24

litigate separately. Dish, 734 F.Supp.2d at 1175.

Arguing that the complaint does not allege advertising injury, Insurers rely heavily on Discover. Ins. Resp. Br. at 36-41. In that case, the district court dealt with allegations of patent infringement which, as in this case, were brought by RAKTL. Discover, 527 F.Supp. 2d at 811-16. The Discover court stated that merely using a technology with advertising capabilities "does not transform the technology into an advertising idea." Id. at 824. Importantly, however, the Discover court had already looked beyond the complaint in the underlying case to determine that RAKTL had narrowed its allegations to claims which did not "address advertising, product promotion, or the solicitation of business." Id. Thus, as the district court in this case noted, "[Discover] is distinguishable from the complaint and arguments relating to this action." Dish, 734 F.Supp. 2d at 1184.

Citing Discover, however, Insurers argue that "[c]ountless technologies could potentially be used to advertise: a cash register that prints coupons on the backs of receipts; a loudspeaker that announces in-store specials; a football stadium jumbotron that plays a beer commercial." Ins. Resp. Br. at 40. Insurers contend that telephone interface systems, like these other technologies, "are not inherently advertising ideas because they also have non-promotional uses." Id. It bears mentioning that Insurers' examples might be more helpful if this were a patent infringement claim for the use of a telephone instead of the automated telephone interface systems actually at issue. But even so, nothing in the words "advertising ideas" suggests that the ideas must have no potential applications outside the field of advertising. Indeed, in Hyundai, the complaint alleged that the

25

"feature [at issue] constituted 'making and using supply chain methods, sales methods, sales, systems, marketing methods, marketing systems, and inventory systems.'" 600 F.3d at 1098 (emphasis omitted). Most of these are uses Insurers specifically argue *do not* constitute advertising. Ins. Resp. Br. at 31.

In reaching our conclusion, we reject the district court's reasoning that Dish cannot have misappropriated advertising ideas because it did not incorporate patented technologies as a substantive element of its communications and interactions with customers. Dish, 734 F.Supp. 2d at 1184. To the contrary, we consider it sufficient that Dish allegedly misappropriated "a means of conveying content to and tailoring its interactions with its customers." Id. In Hyundai, the Ninth Circuit dealt with a suit for the infringement of a patented technology which allowed potential customers to select and combine car options on Hyundai's website and then "displayed customized vehicle images and pricing information." 600 F.3d at 1095. This feature, the court found, constituted the "form" of the advertisement. Id. at 1101. The actual substance of the advertisement—the specific car images and prices displayed—was created by Hyundai, not the patent holder.

Similarly, in Amazon, the court decided that "technology that provides a method by which consumers can download and listen to portions of pre-selected music over the Internet" was "an element of Amazon's advertisement." 85 P.3d at 976-77 (internal quotation marks omitted). Yet the actual music played—that is, the substance of the advertisement—was not patented. Rather, it was the method of conveying that substance

26

that Amazon infringed. Dish's customer service telephone system is likewise an advertising idea insofar as it constitutes the "form" for advertising material Dish conveys.[10] Hyundai, 600 F.3d at 1101. Thus, unlike the district court, we discern no basis for distinguishing the present case from Amazon and Hyundai. Dish, 734 F.Supp. 2d at 1184.

Like the district court, however, we are unpersuaded by Insurers' argument that any promotion Dish engaged in must be excluded from coverage as "one-on-one solicitation" simply because "[a] telephone conversation is, with very limited exception, a two-party interaction." Ins. Resp. Br. at 32 (quoting Dish, 734 F.Supp. 2d at 1182). In Hyundai, the court acknowledged that the website feature at issue resembled solicitation, as opposed to broadly distributed advertising, given that "[t]he patent's raison d'etre is to create *customized* proposals, *specific to an individual user*." Hyundai, 600 F.3d at 1099 (emphasis in original). The court considered it critical, however, that the feature was not limited in the number of users who could access it and was intended for use by the public at large, "even if the precise information conveyed to each user varies with user input." Id. at 1099-1100. The same logic applies to an interactive telephone system such as the one allegedly used by Dish. Certainly nothing in the complaint suggests that Dish's pay-

---

[10] Indeed, Insurers imply that Dish's customer service telephone system would constitute an "advertising idea" if it let a customer preview pay-per-view movies over the telephone, just as Amazon allowed previewing of music over the internet. See Ins. Resp. Br. at 35, 42. But if the complaint potentially alleges use of the system for other information-disseminating purposes that are also advertising, the result should be no different.

27

per-view ordering and customer service functions are not available to the public at large. And indeed, the record reveals that one of the patents at issue, Patent 5,128,984, was designed in part to remedy a concern that "in association with an advertising campaign, inviting members of the general public to participate in a free contest or game by telephone may prompt an overwhelming response." Aplt. App. at 2654.

Recorded promotions offered over the telephone may generally be heard only by one caller at a time over any given phone line. But as the Hyundai and Amazon courts acknowledged, internet advertisements do not become solicitation simply because they are not viewed by a multitude of potential customers simultaneously. Indeed, even a billboard advertisement on a public road may promote a product to only one driver at a time if traffic is light. It is the availability of an advertisement to the general public, as opposed to the number of people on the phone line at a given moment, that we consider dispositive. See Hyundai, 600 F.3d at 1099 (distinguishing Hameid v. Nat'l Fire Ins. of Hartford, 71 P.3d 761 (Cal. 2003), which reached a contrary conclusion, because the court there "focused on the fact that the solicitations were *limited to a discrete number of known potential customers*" (emphasis in original)). The complaint here can be read to allege that Dish's phone system made product and service information available to any member of the general public who called. This sufficiently alleges actions which "potentially" or "arguably" constitute a predicate offense, misappropriation of an advertising idea. Cyprus, 74 P.3d at 301.

## 2. Style of Doing Business

The district court determined that Dish had not misappropriated a style of doing business because it did not take the specific manner in which RAKTL, the patent holder, operated its own business. Dish, 734 F.Supp. 2d at 1184. In other words, the court imposed a requirement that the "style of doing business" at issue must be one actually used by the underlying plaintiff as opposed to a patented method owned by a patent-holding company. Dish argues that "misappropriation of . . . style of doing business" can include the use of a patented technology for advertising purposes whether or not it was any particular company's actual style of doing its business. Dish Op. Br. at 38-39.

In Novell, this court declined to define "style of doing business." Novell, 141 F.3d at 987. We said that the phrase either referred to "a company's comprehensive manner of operating its business," or was synonymous with "trade dress," id., a term we have defined as a product's "overall image and appearance, [which] may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques," Sally Beauty Co., Inc. v. BeautyCo, Inc., 304 F.3d 964, 977 (10th Cir. 2002). In this case we again "find it unnecessary to definitively construe the phrase 'style of doing business' because none of the above-described definitions provide relief to plaintiff." Novell, 141 F.3d at 987.

The RAKTL complaint does not even potentially allege infringement of any trade dress RAKTL, Dish, or any other company employs. Further, whatever "pay-per-view ordering and customer service functions" over the telephone may entail, it is far from an

"allegation that plaintiff misappropriated [RAKTL's] comprehensive manner of operating his business." Novell, 141 F.3d at 987. Dish argues that, just as "advertising ideas" need not refer to ideas for the patent holder to advertise its own products, "style of doing business" should not be restricted to the RAKTL's style of doing its own business. Dish Op. Br. at 38 (citing Hyundai, 600 F.3d at 1101). We need not decide here whether, under some circumstances, a patented process or technology could be so comprehensive and detailed as to constitute a "style of doing business" even absent any actual past usage by, or identification with, a particular business. The allegations in this case do not rise to that level. At most, the complaint here claims only that Dish appropriated certain patented technologies that could be used as *part* of "a company's comprehensive manner of operating its business," Novell, 141 F.3d at 987, and thus it does not allege misappropriation of a style of doing business.

## F. Causation

Having determined that the underlying complaint in this suit potentially alleges the misappropriation of advertising ideas, we must decide whether the complained-of injury arose in the course of advertising, as the policy language requires. Ins. Resp. Br. at 9 ("The policies also require that the 'advertising injury' be 'caused by an offense committed in the course of advertising your goods, products or services.'" (quoting Aplt. App. at 210, 425, 473, 531, 953, 1009-10)).[11] If RAKTL's injury was not actually caused

_____

[11] We note that the National Union policy employs apparently more restrictive

(continued...)

30

by advertising activities, there is no duty to defend.  As we have recognized, this

causation requirement exists because

> [v]irtually every business that sells a product or service advertises, if only in the sense of making representations to potential customers.  If no causal relationship were required between "advertising activities" and "advertising injuries," then "advertising injury" coverage, alone, would encompass most claims related to the insured's business.

Novell, 141 F.3d at 989 (quoting Bank of the West v. Super. Ct., 833 P.2d 545, 560 (Cal.

1992)).

Courts have arrived at several very different understandings of causation in this

context.  See Frog, Switch, 193 F.3d at 750 n.8.  Under one approach, causation is

satisfied if the alleged advertising activities alone would be actionable.  See id. (citing

Dogloo, Inc. v. N. Ins. Co. of New York, 907 F.Supp. 1383, 1390 (C.D. Cal. 1995)).

Similarly, we have observed that "the *advertising activities* must *cause* the injury—not

merely expose it."  Novell, 141 F.3d at 989 (emphasis in original) (quoting Simply Fresh

Fruit, 94 F.3d at 1223) (internal quotation marks omitted); see also Microtec Research,

Inc. v. Nationwide Mut. Ins. Co., 40 F.3d 968, 971 (9th Cir. 1994) ("If the [insured] does

some wrongful act and then advertises it, harm caused by the wrongful act alone is not

within the scope of the term advertising injury.").  On the other hand, Insurers argue that

the proper test is whether the injury could have arisen in the absence of advertising; if so,

---

[11](...continued)
language.  Aplt. App. at 208 (requiring that the injury arise "solely" from the advertising activities).  As discussed below, we do not decide here whether this language relieves National Union of its duty to defend.  See infra at 36-37.

they contend, there is no causal nexus. Ins. Resp. Br. at 65. The district court, having held that no predicate offense was alleged, expressly declined to "resolve this disparity." Dish, 734 F.Supp. 2d at 1185.

Under any test, our causation analysis must begin with a determination of what the alleged injury actually is and where it arose. According to Insurers, in this case the injury lies in Dish's development of infringing technology, and "[t]he infringement was complete as soon as Dish developed the telephone system with advertising capabilities—*before* any customer actually heard the system's recorded material." Ins. Resp. Br. at 63 (emphasis in original). If true, this would be a strong argument against the existence of any causal connection—this case would be much like Simply Fresh Fruit, where the alleged misappropriation of manufacturing technology was complete before the insured ever engaged in advertising by showing the technology off on factory tours. 94 F.3d at 1223.

Insurers cite no record evidence or case in support of their argument, however, and it appears to be contradicted by the underlying complaint. In it, RAKTL alleges that it "has been, *and continues to be*, damaged and irreparably harmed by [Dish's] infringement, *which will continue* unless [Dish] is enjoined by this Court." Aplt. App. at 168 (emphasis added). More specifically, RAKTL alleges that Dish "employs the inventions of certain of the patents-in-suit. [RAKTL] has repeatedly attempted to engage each defendant in licensing negotiations, but to date, none of the defendants have agreed to take a license to any of the patents-in-suit." Id. at 163. These allegations clearly

32

indicate that the harm RAKTL complains of was not fully accomplished at a single point in the past when Dish's system was first developed. Rather, the patent holder claims to have suffered—and to continue to suffer—harm from Dish using its patented technologies without paying for a license. As we have already determined, this alleged unlicensed use potentially includes advertising activities.

Evidently, then, this is not a case in which an insured manufactured an infringing product and then merely advertised its misdeed. Cf. Microtec, 40 F.3d at 971 ("If the [insured] does some wrongful act and then advertises it, harm caused by the wrongful act alone is not within the scope of the term advertising injury."). Rather, the injury RAKTL alleged in this case derived, at least in part, "from *[the patented technology's] use as the means to market goods for sale*. In other words, the infringement occurred in the advertising itself. [The underlying] allegations therefore satisfied the causation requirement for a potential advertising injury." Amazon, 85 P.3d at 978 (emphasis in original); see also Hyundai, 600 F.3d at 1103 ("[T]he use of the . . . feature in the website is itself an infringement of the patent because it is the use of the . . . feature that violates the patent . . . and critically, it is *that use* that caused the injuries alleged . . . ." (emphasis in original)). Moreover, even if Dish had somehow put the telephone systems to use only for advertising—restricting its usage, perhaps, to conveying promotional information to callers about how they could order pay-per-view by other means—RAKTL still could have alleged that Dish's unlicensed use of the technology infringed some of the patent claims at issue. This is, accordingly, not a case "in which [the] advertising alone is not

33

actionable," Frog, Switch, 193 F.3d at 750 n.8 (quoting Dogloo, 907 F.Supp. at 1390), and the complaint potentially alleges an injury inflicted in the course of Dish's advertising activities.

Arguing to the contrary, Insurers rely primarily on Delta Computer Corp. v. Frank, 196 F.3d 589, 591 (5th Cir. 1999) and Discover, 527 F.Supp. 2d at 826-27. Ins. Resp. Br. at 61-65. In Delta, the Third Circuit addressed the insured companies' argument that their misappropriation of billing software fell within the "advertising injury" coverage of a CGL policy. Although the technology at issue "allowed for the inclusion of advertisements along with the text of the bills," 196 F.3d at 590, the court perceived no causal connection between the alleged copyright infringement and the insureds' advertising activity, id. at 591. Emphasizing that "the underlying pleading state[d] nothing about advertising," the Delta court concluded that the underlying claim was "essentially for infringement of [a] copyrighted software program," not for any advertising the plaintiff may have done with it. Id. at 591. Similarly, in Discover, the court acknowledged the advertising capabilities of the technology at issue, but reasoned that "RAKTL could have complained of the same injury and asserted the same patent infringement claim, even if Discover never took advantage of the advertising capabilities of its automated telephone system." 527 F.Supp. 2d at 826. Insurers argue, on the basis of these cases, that if the complaint here attributes RAKTL's injury to any "other things" in addition to advertising conduct, then the infringement could have occurred without advertising and no causal nexus exists. Ins. Resp. Br. at 65.

34

To the extent that Delta and Discover conflict with Colorado law and our analysis above, we decline to follow them here. Whether or not the Third Circuit properly applied Louisiana law in Delta, its approach is inconsistent with Colorado's rule that a duty to defend arises wherever the complaint even potentially alleges conduct within the policy language. Compass, 984 P.2d at 614. In Delta, the court thought that the underlying claim was "essentially" for infringement of a program that was "primarily" designed for billing, not advertising. 196 F.3d at 591. Accordingly, it concluded that "any advertising done through use of the software [wa]s incidental to [the underlying plaintiff's] core complaint." Id. In Colorado, however, the duty to defend is not restricted to the "core complaint" or to the underlying plaintiff's "primary" grievance. Rather, the duty to defend an entire suit arises "when the underlying complaint alleges any facts or claims that might fall within the ambit of the policy." Cyprus, 74 P.3d at 301 (emphasis omitted). Thus, neither Delta nor Discover, which relied on the former case for its reasoning, 527 F.Supp. 2d at 826-27, is persuasive here.

Moreover, to adopt Insurers' argument that "[t]here is no causal nexus where the injury could have occurred separate and apart from any advertising," Ins. Resp. Br. at 61, would seem to require that advertising be the sole cause of the alleged injury. Yet only National Union, among the five Insurers, actually included a requirement that "injury aris[e] solely out of . . . advertising" in the policy it sold Dish. Aplt. App. at 208. To impose a duty to defend under the other policies only if advertising alone, and nothing else, caused injury would give the other four insurers the benefit of a "more rigorous"

35

causation standard than they bargained for. Colorado law does not allow us to alter the parties' contracts in this way. McGowan v. State Farm Fire & Cas. Co., 100 P.3d 521, 523 (Colo. App. 2004) ("We may not rewrite, add, or delete provisions to extend or restrict coverage." (citing Cyprus, 74 P.3d at 299)).

### III.

We REVERSE the district court's grant of summary judgment to the Insurers and REMAND for further proceedings. While we agree with the district court's conclusion that patent infringement may, under certain circumstances, constitute "misappropriation of advertising ideas," we disagree with its ruling that the patented means of conveying advertising content at issue here could not be "advertising ideas" within the meaning of Dish's commercial general liability policies. As regards the duty to defend, we hold that the RAKTL complaint "may arguably fall within the polic[ies]" at issue, Cyprus, 74 P.3d at 299, because it potentially alleged advertising injury arising from Dish's misappropriation of its advertising ideas, which Dish committed in the course of advertising its goods, products, or services, Novell, 141 F.3d at 986.

Several issues the district court did not address remain to be resolved. In their response brief, Insurers raise arguments regarding unique language in the policies issued by Arch and National Union; specifically, they argue that Arch's intellectual property exclusion and National Union's sole causation requirement bar coverage. Ins. Resp. Br. at 66-70. The excess insurers, Arch, National Union, and XL, also contend that they have no duty to defend in the absence of a showing that Dish's primary policy coverage has

36

been exhausted.  <u>Id.</u> at 70.  The district court did not reach these arguments, as it decided the case in favor of Insurers on other grounds.  <u>Dish</u>, 734 F.Supp. 2d at 1185 n.20.  We express no view as to the merits of those arguments, but instead REMAND for the district court to address them in the first instance.  Accordingly, we also DENY as moot Arch and National Union's motion to strike portions of Dish's reply brief or for leave to file a surreply regarding these issues.